RAILROAD v. CENTRAL LUMBER, ETC., CO.

(*Knoxville.*    November  9,  1895.)

CONTRACT.    *Effect of arbitration clause.*

All the parties to a building contract, providing that a specified person shall have the sole and absolute right and authority to determine the amount of allowance for differences in case of alterations, are bound by his decision, unless it is fraudulent, or so excessive or unjust as to imply bad faith or gross neglect.

Cases cited and approved: McDonald v. Railroad, 93 Tenn., 281; 114 U. S., 540; 109 U. S., 618; 138 U. S., 185; 34 Am. St. Rep., 403.

FROM GREENE.

Appeal  from  Chancery  Court  of  Greene  County. JNO.  P.  SMITH,  Ch.

SHOWN  &  SUSONG  for  Railroad.

WILSON  &  PIPER  for  Defendants.

JOSHUA  W.  CALDWELL,  Sp.  J.    This  is  a  bill filed  by  the  East  Tennessee,  Virginia  &  Georgia Railway  Company  against  the  Central  Lumber  & Manufacturing  Company,  of  Greeneville,  Tenn.,  and the  sureties  of  the  last  named  company  on  an  indemnity  bond.

On  August  21,  1891,  the  East  Tennessee,  Vir-

ginia & Georgia Railway Company entered into a contract with the Central Lumber & Manufacturing Company, by which the lumber company undertook to build for the railway company a brick depot at Greeneville, Tenn. The building was to be constructed according to specifications agreed on, and at a cost of $6,250, including the clearing of the ground.

The lumber company gave bond in the penalty of $4,000, conditioned to save the railway company harmless from all liens and expenses incident to liens, and from all damages resulting from its default, and J. N. Harris, M. P. Reeve, A. W. Kelly, and Isaac O. Harrell became the sureties on this bond.

The building was erected, and, pending the construction, payments aggregating $4,760 were made by the railway company. The sum of $139.88 was allowed for extra work, bringing the contract price up to $6,389.88. There was thus left to the credit of the lumber company, in April, 1892, the sum of $1,629.88. Lien claims were asserted by various persons, and were paid by the railway company to the amount of $1,951.96, being an overpayment by the complainants of $322.08. To recover that amount, with interest, this bill is brought by the railway company against the lumber company and the sureties on the indemnity bond, except J. N. Harris, who appears to have left the State.

It appears by stipulation of counsel that the

amount of lien claims paid by the railway company
is as stated above, and it is further agreed that
the bill be treated as the bill of the receivers of
the railway company.

The defendants answer jointly, and admit the ex-
ecution of the contract and the identity of the orig-
inal instrument which is filed with this bill.    But
they deny that anything is due complainant, and
claim that, upon a fair estimate, the balance is in
their favor.    They aver, and such is the fact, that
the depot was to be built upon the site of a former
depot, which had been burned; that the foundations
of the former structure, or a part of them, were
to be used for the new one, and that, much of the
material of the old foundations proving to be unfit
for the purpose, defendants furnished new bricks for
foundations at their own cost, and did other small
items of extra work, and did not consult the rail-
way company's engineer before doing this, because
they were afraid of forfeiting compensation under
the contract by delay.    For this defendants say no
proper credit has been allowed, and that, if such
credits were allowed, the railway company would be
the debtor.    The amount of credit claimed on this
account is not stated in the answer.

The contract requires the defendant company to
build, for the price specified, a brick passenger
depot, to provide all material, supplies, equipment,
etc., and do all the work of every kind, character,
and description intended, called for, and designed

and required, in, by, and under the plans, drawings, and specifications. It was expressly stipulated that the defendant company was to make alterations and variations as the railway company desired, and the following additional agreement on this point was made, viz.: "All allowances and differences hereunder, on account of such work, must be agreed and settled upon before the same is begun, otherwise the chief engineer of the East Tennessee, Virginia & Georgia Railway Company shall have the sole and absolute right and authority, and the same is hereby given, to fix and determine the amount of such allowance or differences, if any."

The cost of this extra work upon the foundations and elsewhere was not agreed upon nor settled before it was done, although it was ordered by the assistant engineer in charge, and the amount to be allowed for it was fixed by D. W. Lum, the chief engineer of the railway company, at $139.88, as above stated. The engineer says that his estimate is based on actual measurement. By agreement of parties, the litigation is limited to the cost of the foundations proper, for which the exact amount fixed by Mr. Lum is $108.16, while the defendant company claims more than twice that amount. The railway company relied upon the engineer's estimate as final and conclusive under the contract. The principal contention of defendants was, that they were entitled to credit at the rate of eleven dollars a thousand for about 30,000 bricks laid in the

foundation, replacing old and worthless bricks. They claim that, whereas the engineer charged the defendant company with the estimated cost of the old brick used in the reconstruction, he had no right to do so, because it is the custom in such cases for the old bricks to be free to the contractors; at least to go to the contractors for the cost of cleaning. This is not relied upon in the answer, which is altogether general and vague, but proof was taken on the point as if it had been pleaded. The proof is not satisfactory as to the accuracy of the estimate relied on by defendants. There is some testimony tending to show that the custom in this respect is as claimed by the defendants, but it is not sufficient. The testimony as to usage, taken as a whole, is hardly consistent in effect, and falls short of the explicitness and certainty which are necessary to sustain such a defense, and could hardly avail defendants, even if the question could be considered. It is clear that the railway company never understood the contract in this way.

One of the defendants, M. P. Reeve, wrote to F. K. Huger, the railway superintendent, in regard to the old bricks, and Huger replied: " I have no objection to you taking the old bricks, provided you replace them with others as good or better, but would suggest that you first get permission to do so. Please see that they are returned."

It appears that one of the defendants, M. P. Reeve, built the upper story of a brick house near

the depot with these old bricks.    So that this material, which was intended to be used in constructing the foundations of the new depot, must have been of substantial value, and the defendant, Reeve, diverting it to his own use in part, and the defendant company using it in part in the foundation, we think the engineer's determination on this point was correct.

These questions are considered in deference to the earnest insistence and argument of counsel, but the determination of them is not necessary in the view that has been taken of this case.

The Chancellor was of opinion that the estimate of the engineer of the railway company was, by virtue of the contract, final and conclusive, and therefore he rendered a decree in favor of the railway company against the lumber company and its sureties on the indemnity bond for the amount of the overpayment on lien claims—viz., $322.08, with interest.

The decree is obviously correct.    The rule is well settled that where parties to a construction contract of any kind agree to submit differences, or questions of any character arising in connection with the work, to the decision of an architect or of an engineer, the decision of the arbiter thus selected is final, and all parties are bound by it unless it be shown that the estimate or conclusion is fraudulent or so excessive or so palpably unjust as to imply bad faith or gross neglect.    The general rule

that engineers' estimates are conclusive in such cases was approved by this Court in the case of *McDonald, Shea & Co.* v. *Railroad*, 93 Tenn., 281. In that case, however, the engineer's holding was not assailed. In the case under consideration the finding of the engineer is not attacked by explicit averments in the pleadings, and it might, according to the weight of authority, be held that, for this reason alone, the Chancellor's decree should be affirmed. But the conclusion may be put upon higher grounds. The case of *Martinsburg & Potomac Railroad Co.* v. *March*, 114 U. S., 540, involved the interpretation of a railroad construction contract which provided that the company's engineer should, in all cases, determine questions relating to the execution of the work, and that his estimate should be final and conclusive. It was held that, in the absence of fraud or such gross mistake as would necessarily imply bad faith or a failure to exercise an honest judgment, the action of the engineer was conclusive upon the parties. To the same effect is the holding in *Sweeney* v. *United States*, 109 U. S., 618, and *Chicago & Santa Fe Railroad Co.* v. *Price*, 138 U. S., 185. The holdings of the State Courts are in accord with this decision. In *Williams* v. *Chicago, etc., Railway Co.*, 34 Am. St. Rep., 403, it was said by the Supreme Court of Missouri that in such cases engineers' estimates may be impeached only for fraud or gross mistake implying bad faith.

See, also, *Brush* v. *Fisher*, 14 Am. St. Rep., 510. In 9 Am. & Eng. Enc. of Law the rule deduced from a large number of cases cited is that, if the engineer's decision be honest, and does not appear to be tainted with fraud, it is conclusive upon the parties, no matter how erroneous. This appears, however, to be an extreme statement, and the rule is better declared in *Railroad* v. *March*, 114 U. S., 540, and in *Railroad* v. *Price*, 138 U. S., 185, quoted above.

In this case there is no charge of fraud, and no attack upon the good faith or fairness of the engineer in the pleadings, and even the proof does no more than raise a question as to which there may be honest difference of opinion, but as to which the facts of the record appear to sustain the engineer. It seems to be precisely one of those matters which the parties must have had in mind when they agreed that the engineer should pass upon the questions relating to extra work. There is abundant authority to sustain the Chancellor's decree, whether the engineer be regarded technically as an engineer or as an architect in this case.

The decree is affirmed, with costs.