COCKE COUNTY BOARD OF HIGH-
WAY COMMISSIONERS,
Plaintiff-Appellee,

v.

NEWPORT UTILITIES BOARD, et al.,
Defendants-Appellees,

and

Pierce Ditching Company,
Defendant-Appellant.

Supreme Court of Tennessee,
at Knoxville.

May 6, 1985.

William O. Shults, Campbell, Hooper & Shults, Newport, for defendant-appellant.

William M. Leibrock, Fred L. Myers, Jr., Edward F. Hurd, Newport, for plaintiff-appellee.

James C. McSween, Jr., Newport, for defendants-appellees.

BROCK, Justice.

The Cocke County Board of Highway Commissioners ("Board") brought this action to recover damages for injury to roads in their county. In 1977 Pierce Ditching Company ("Pierce") entered into a contract with the Newport Utilities Board ("Newport") to install sewage pipes. The instant

litigation arose because Pierce had to "cut" the pavement of several Cocke County roads in order to install the pipes and the Board was not satisfied with the repairs which were effected on its roads after the pipe had been installed.

When construction on the sewer project began in 1977, no one notified the Board that some of its roads would be "cut." After a highway commissioner demanded an explanation for the ongoing construction on county roads, the General Manager of Newport, Jim Franks, wrote a letter dated May 16, 1977, to Jack Phillips, the Superintendent of Roads for Cocke County, which stated, in pertinent part, that:

"We apologize for not contacting you earlier regarding proposed locations of sewer pipeline extensions on county roads ...

"Wherever sewer lines are installed on county roads, the roads will be restored to their original condition at the conclusion of the project."

Attached to the May 16, 1977, letter was a copy of the provisions of the contract between Newport and Pierce which pertained to the cutting and replacing of pavement on the project. The pertinent parts of the contract on this subject follow:

"A. Restore to at least the conditions which existed before excavation, all surfaces which have been disturbed by the pipeline installation, as specified below ...

"B. The maximum width of all pavement and all other surface repairs allowable for payment by the owner shall be the maximum trench width at the TOPS of the pipes (as specified hereinbefore) plus 12" or 6" beyond each side of the specified maximum trench width at the tops of the pipes. At contractor's expense, make all repairs outside of this limit ... Replace with new surfaces all existing surfaces which are cut, removed, or otherwise damaged by the work under this contract, as specified below. All new surfaces shall conform accurately to the elevations and contours of the existing adjacent undisturbed surfaces ...

"(2) Existing asphalt ('black top') surfaces: replace these with a 6" thick compacted base course of new road gravel, and a 2" minimum thickness surface course of hot lay plant mix type asphaltic concrete conforming to the applicable road or street paving specifications of the area in which the work is located ...

"(3) Existing double bituminous surface treatment surfaces: replace these with a 6" thick compacted base course of new road gravel, and a double bituminous surface treatment course to match the existing surface course and conforming with the applicable road or street paving specifications of the area in which the work is located ...

"F. County approvals: All repairs to county roads shall be subject to the approval of each county road department involved. FINAL PAYMENT WILL NOT BE MADE UNTIL THE CONTRACTOR HAS OBTAINED ALL NECESSARY COUNTY ROAD DEPARTMENT APPROVALS AND SUBMITTED ACCEPTABLE WRITTEN EVIDENCE THEREOF." [Emphasis as in contract.]

After receiving the May 16, 1977, letter, the Board permitted the construction project to continue. Pierce "cut" and installed sewer pipe under sections of Carson Springs Road, Clevenger's Cut-Off Road, Runnion Addition Road and various roads in Broad Acres and Wood Acres in Cocke County, Tennessee. In 1979, a dispute arose between Pierce, Newport and the Board over repairs which had been made to roads which had been cut during the course of the project. The Board refused to approve any of the repairs made by Pierce to the roads in Cocke County which had been cut.

In regard to the acceptability of completed work under the contract between Pierce and Newport, the contract provides that:

"The ENGINEER shall in all cases determine the amount, quality, acceptability

and fitness of the several kinds of finished work and materials which are to be paid for hereunder, and shall decide all questions which may arise as to the fulfillment of this contract on the part of the CONTRACTOR, and the ENGINEER'S interpretation of the contract and the ENGINEER'S determination and decision thereon shall be final and conclusive; such determinations and decisions, in case any question arises shall be a condition precedent to the CONTRACTOR'S right to receive any money hereunder ..."

Allen & Hoshall, Inc., the engineer on the project, determined that Pierce had complied with the terms of the contract in repairing the Cocke County roads which had been cut and recommended that Pierce be paid in accordance with the terms of the contract.

The Board filed suit against Pierce and Newport and this case was tried in the Circuit Court for Cocke County, Tennessee, without the intervention of a jury. The trial court issued a memorandum opinion which exonerated Pierce but found Newport liable to the Board in the amount of $60,000.00. In so holding, the trial court determined that the May 16, 1977, letter which Newport sent to the Board had the same meaning in regard to restoring the roads cut during the course of the project as the terms of the Newport-Pierce contract in that the defendants were obligated to restore the roads to the same condition which existed before any excavation had taken place. The trial court further found that the roads were not restored to the condition which had existed before excavation had occurred. However, the trial court exonerated Pierce and held Newport liable to the Board, stating that:

"In view of all of the above, the court finds that the Newport Utility Board should have had a better understanding with the County Highway Commissioners and the Road Department with reference as to precisely and exactly what was to have been done before their having entered upon the roads in question and excavating eight (8) to ten (10) foot trenches down the center of certain roads and along the edges of certain other ones. Additionally, in view of the representations made and the assurances given to the Cocke County Commissioners and in view of the objections and the statements made with reference to what would be approved by the commissioners, the Newport Utility Board solely and alone is liable for any damages to the roads in question by not having restored them to their original condition."

As is noted above, judgment was entered against Newport in the amount of $60,000.00.

The Court of Appeals concurred in the trial court's construction of the Newport-Pierce contract vis á vis the May 16, 1977, letter and in the trial court's finding that roads which had been cut by Pierce had not been returned to the condition which they were in prior to excavation. However, the Court of Appeals reversed the trial court, holding that Newport was entitled to be indemnified by Pierce in the amount of the judgment rendered to the Board. This holding was predicated upon an indemnification provision in the Newport-Pierce contract.

The following issues are presented in the instant appeal:

(1) Did the trial court err in finding that the defendants failed to restore the roads in accordance with their duty to the plaintiff?

(2) Did the trial court err in awarding damages to the plaintiff in the amount of $60,000.00?

(3) Does the evidence preponderate in favor of the finding of the Court of Appeals that the defendant contractor contractually agreed to indemnify the defendant utility for this loss?

(4) Did the trial court err in dismissing Newport's cross-claim for breach of contract against Pierce?

Since this case was tried before the trial court without the intervention of a jury and has been reviewed by the Court of Appeals,

the appropriate standard of review to be applied in this appeal was stated in *City of Columbia v. C.F.W. Const. Co.*, Tenn., 557 S.W.2d 734 (1977):

"Thus, to the extent that the findings of fact of the trial judge and the Court of Appeals concur, they shall be conclusive upon this Court if there be any evidence to support them. But, to the extent that the findings of the trial judge and the Court of Appeals do not concur, the facts are open to a de novo examination in this Court with the presumption, however, that the judgment of the trial judge was correct unless the evidence preponderates against it." 557 S.W.2d at 740. *See* T.C.A., § 27–1–113.

Pierce argues that the trial court erred in disregarding expert witness testimony presented by the defendants in finding that the roads in question were not returned to their condition prior to excavation. Pierce's brief states: "[t]his case is particularly frustrating to the defendants because all of the painstakingly gathered expert witness testimony presented by Pierce and its co-defendant fall by the wayside when confronted with the testimony elicited by the plaintiff from witnesses who to a very great extent, were layment with no particular expertise in either evaluating or constructing modern roadways."

The issue before the trial court was whether the roads which had been cut by Pierce were returned to the condition they were in prior to excavation. Expert testimony is necessary when the subject under examination is one that requires that the court and jury have the aid of knowledge or experience such as men not specially skilled do not have and such, therefore, as cannot be obtained from ordinary witnesses. *Casone v. State*, 193 Tenn. 303, 246 S.W.2d 22 (1952). The issue involved in this case would appear to be within the ken of ordinary laymen. *See Lawrence County Bank v. Riddle*, Tenn., 621 S.W.2d 735 (1981). Certainly, testimony from fact witnesses describing the before and after condition of these roads would be highly relevant evidence. "Expert opinions are not ordinarily conclusive in the sense that they must be accepted as true on the subject of their testimony, but are generally regarded as purely advisory in character; the jury may place whatever weight they choose upon such testimony and may reject it, if they find that it is inconsistent with the facts in the case or otherwise unreasonable." 31 Am.Jur.2d *Expert and Opinion Evidence* § 138 (1967). *Accord: Gibson v. Ferguson*, Tenn., 562 S.W.2d 188 (1976); *Act-o-Lane Gas Service Co. v. Hall*, 35 Tenn.App. 500, 248 S.W.2d 398 (1951). Under T.C.A., § 65–27–106, Newport was obligated to return the roads in question to substantially the same condition they were in prior to excavation. A review of the evidence discloses that there is material evidence in the record that the roads which had been cut by Pierce were not returned to the condition they were in prior to excavation by Pierce. Accordingly, the trial court's finding that the roads in question were not restored to the condition they were in prior to excavation and that Newport is liable to the Board must be affirmed.

The defendants argue that the trial court improperly awarded damages in the amount of $60,000.00 when the plaintiff failed to present any evidence of the cost of adequately patching the roads in question. All of the plaintiff's proof of damages was predicated upon the assumption that the roads would be paved from ditchline to ditchline. Newport's statutory obligation was to return the roads substantially to their pre-excavation condition. *See* T.C.A., § 65–27–106. The proof further demonstrated that it was the standard custom in pipeline installation to repave only the disturbed areas of the road excavated for pipeline installation. Finally, the Newport-Pierce contract provided that: "[t]he maximum width of all pavement and all other surface repairs ... shall be the maximum trench width at the TOPS of the pipes (as specified hereinbefore) plus 12″ or 6″ beyond each side of the specified maximum trench width at the tops of the pipes."

■ Neither under T.C.A., § 65–26–105, nor under the terms of the Newport-Pierce contract is the Board entitled to have the roads in question repaved from ditchline to ditchline. There is no material evidence in the record pertaining to the cost of adequately patching the roads in question and returning them to substantially the same condition they were in prior to excavation. Accordingly, there is no material evidence in the record to support the $60,000 judgment which the trial court rendered against Newport. It is necessary to remand this case to the trial court for a hearing on damages consistent with the guidelines set forth above. *See,* T.C.A., § 27–3–128.

The other issues involved in the instant appeal involved Newport's indemnification claim against Pierce. The trial court dismissed Newport's cross-claim against Pierce. In this regard, the Court of Appeals reversed the trial court and determined that Newport was entitled to be indemnified by Pierce for any judgment rendered against it in the instant litigation.

■ Pierce asserts that it cannot be held liable to indemnify Newport for any judgment rendered for the Board because Newport negligently raised the Board's expectations regarding the repavement of cut roads by virtue of the May 16, 1977, letter and that the May 16, 1977, letter was the basis for the judgment rendered by the trial court. This argument assumes that the May 16, 1977, letter created a greater obligation in regard to repaving the "cut" roads than existed under the Newport-Pierce contract and that the judgment rendered by the trial court resulted from the fact that the "cut" roads were not repaved from ditchline to ditchline. The trial court determined that the May 16, 1977, letter had the same meaning as the terms and provisions of the Newport-Pierce contract. Moreover, liability was predicated upon a finding by the trial court that the roads in controversy were not returned to the condition which they were in prior to excavation. Accordingly, Pierce's arguments that Newport's conduct resulted in the judgment rendered by the trial court and that Newport cannot recover under a theory of indemnity because of its "concurrent negligence" have no factual bases in the record.

■ Similarly, Pierce's argument that Newport is equitably estopped from seeking indemnification because it instructed Pierce to disregard the Board's refusal to approve repairs on the cut roads because those roads were not repaved from ditchline to ditchline and to conform with the requirements of the construction contract has no factual predicate in the record. The judgment rendered in the trial court was not predicated upon Pierce's failure to repave the roads from ditchline to ditchline, it was predicated upon Pierce's failure to adequately patch the roads so that they were in substantially the same condition which they were in prior to excavation.

■ Pierce further asserts that the Engineer's determination that its completed work was acceptable under the contract and recommendation that Pierce be paid under the terms of the contract precludes it from being held liable to indemnify Newport for any judgment rendered in favor of the Board in the case at bar. The construction contract provides that:

"2 ENGINEER'S DECISION

"A. The ENGINEER shall in all cases determine the amount, quality, acceptability and fitness of the several kinds of finished work and materials which are to be paid for hereunder, and shall decide all questions which may arise as to the fulfillment of this contract on the part of the CONTRACTOR, and the ENGINEER'S interpretation of the contract and the ENGINEER'S determination and decision thereon shall be final and conclusive; such determinations and decisions, in case any question arises, shall be a condition precedent to the CONTRACTOR'S right to receive any money hereunder."

Under Tennessee law, a clause in a construction contract making the Engineer's decision concerning the acceptability and fitness of work performed under that contract "final and conclusive" is binding on

the parties to the contract unless there is fraud or the decision is so unjust as to imply bad faith or gross neglect. *Railroad v. Central Lumber, etc., Co.,* 95 Tenn. 538, 11 Pickle 538, 32 S.W. 635 (1895). However, arbitration clauses are not binding on third parties who are not parties to the contract. *Jackson v. Chambers,* Tenn., 510 S.W.2d 74 (1974).

Pierce argues that if the Board received a judgment against Newport as a third-party beneficiary of the construction contract, the Board's rights under the contract can rise no higher than Newport's and the Engineer's approval of Pierce's work precludes Pierce from being held liable.

The trial court rendered a judgment against Newport in favor of the Board. As has been noted, the factual predicate of this judgment was *not* the May 16, 1977, letter or the failure to repave the roads in controversy from ditchline to ditchline. The issue is whether, in light of the Engineer's determination that Pierce's work was acceptable, Newport can require Pierce to indemnify it for that judgment. Newport relies upon the indemnification clause in the contract, which provides that:

"The CONTRACTOR (Pierce) shall indemnify and save harmless the OWNER (Newport), the ENGINEER, their agents and employees from all claims, suits or proceedings of any nature whatsoever which may be brought against the OWNER, the ENGINEER, their agents, or their employees on account of any injuries to persons or property received from the CONTRACTOR or his agents or servants. See also paragraph 26C hereinafter."

Paragraph 26C referred to in the indemnification clause pertains to Pierce's obligation to purchase public liability insurance and property damage insurance to protect Newport. Pierce argues that the scope of the indemnification clause is determined by its reference to paragraph 26C and that that clause is limited to liability suits for personal injury and property damages.

■■■■ It is the Court's duty to enforce contracts *according to their plain terms.*

*Bob Pearsall Motors, Inc. v. Regal Chrysler-P., Inc.,* Tenn., 521 S.W.2d 578 (1975). In construing a contract, the entire contract should be considered in determining the meaning of any or all its parts. *Crouch v. Shepard,* 44 Tenn. 384, 4 Cold. 383 (1867). It is the universal rule that a contract must be viewed from beginning to end and all its terms must pass in review, for one clause may modify, limit or illuminate another. *Associated Press v. WGNS, Incorporated,* 48 Tenn.App. 407, 348 S.W.2d 507 (1961). "As a rule, where there are, in a contract, both general and special provisions relating to the same thing, the special provisions control. Thus, where there is uncertainty between general and specific provisions, the specific provisions ordinarily qualify the meaning of the general provisions, although this is not universally or necessarily so." 17 Am.Jur.2d *Contracts* § 270 (1964).

■■■■ By its very terms the indemnification clause includes but is not limited to liability suits. The clause applies to "all ... suits ... of *any nature whatsoever"* brought against Newport "on account of any injuries to persons or property received from the CONTRACTOR (Pierce)." [Our emphasis.] In the case at bar the roads of Cocke County were damaged by Pierce. The trial court held Newport liable for Pierce's failure to restore those roads to the condition they were in prior to excavation. The indemnification clause specifically applies to litigation in which Newport is held liable for Pierce's damages to property. Thus, the indemnification clause prevails over the general arbitration clause which has no reference to litigation and judgments obtained against Newport. Accordingly, the indemnification clause of the construction contract governs the case at bar and requires that Pierce indemnify Newport for the judgment obtained by the Board.

Contrary to Pierce's protestations of unfairness, this result is fully compatible with the principles of indemnification. "The right of indemnity rests upon the principle that everyone is responsible for the conse-

quences for his own wrong, and, if another person has been compelled to pay the damages which the wrongdoer should have paid, the latter becomes liable to the former." *Southern Coal and Coke Co. v. Beech Grove Mining Co.,* 53 Tenn.App. 108, 381 S.W.2d 299 (1964). Liability in the case at bar was not predicated upon the May 16, 1977, letter, but upon Pierce's failure to return the roads in controversy to their pre-excavation condition. While Newport can be held liable under T.C.A., § 65–27–106, to the Board for Pierce's failure to comply with the terms of the contract, Pierce can be held liable to indemnify Newport for this liability under the indemnification clause of the Newport-Pierce contract and under common law principles of indemnification.

Pierce asserts that Newport presented no evidence of Pierce's failure to perform under the contract. The factual issue before the trial court was whether the roads in controversy were returned to the condition they were in prior to excavation. The trial court determined that the Board had proved by a preponderance of the evidence that these roads were not returned to the condition they were in prior to excavation. The Court of Appeals concurred in this finding. There is material evidence in the record to support this finding of fact. This Court is bound to accept the finding of fact. Regardless of Newport's proof, there has been a factual finding that Pierce breached its contract and a judgment was returned against Newport because of that breach. Newport can rely upon this fact-finding in seeking indemnification from Pierce. Pierce has no complaint. It has the opportunity to litigate and did litigate the factual issue of whether the roads in question were returned to the condition they were in prior to excavation. Having lost that issue, Pierce is now obligated to indemnify Newport under the terms of the contract and under common law principles of indemnification.

The Board's judgment, except for the amount of damages, is affirmed, Newport's judgment against Pierce, except for the amount of damages, is affirmed and this case is remanded to the trial court for a new determination of damages. Costs are taxed equally against Pierce Ditching Company and the Cocke County Board of Highway Commissioners.

COOPER, C.J., and FONES, HARBISON and DROWOTA, JJ., concur.