FRANCES ULRICH,                        )
                                       )
        Plaintiff/Appellee,            )        Appeal No.
                                       )        01-A-01-9606-CV-00264
v.                                     )
                                       )        Sumner Circuit
WILLIAM AUGUST ULRICH,                 )        No. 4528-C
                                       )
        Defendant/Appellant.           )

FILED

February 21, 1997

Cecil W. Crowson
Appellate Court Clerk

COURT OF APPEALS OF TENNESSEE

MIDDLE SECTION AT NASHVILLE


APPEAL FROM THE CIRCUIT COURT FOR SUMNER COUNTY

AT GALLATIN, TENNESSEE


THE HONORABLE THOMAS GOODALL, JUDGE

ROGER A. SINDLE
103 Bluegrass Commons Boulevard
P. O. Box 738
Hendersonville, Tennessee 37077-0738
        ATTORNEY FOR PLAINTIFF/APPELLEE


CURTIS M. LINCOLN
175 East Main Street
Hendersonville, Tennessee 37075
        ATTORNEY FOR DEFENDANT/APPELLANT

AFFIRMED AND REMANDED




                                SAMUEL L. LEWIS, JUDGE

# MEMORANDUM OPINION[1]

This is an appeal by defendant William August Ulrich (the "Husband"), from the judgment of the trial court finding him in contempt for violating the court's final order regarding alimony to be paid to his former wife, plaintiff Frances Ulrich (the "Wife"). Finding the amount of alimony arrearages to be $1,668.47, the court ordered the Husband to pay this amount and set forth the method for calculating future alimony payments. In addition, the Court awarded the Wife $3,687.50 in attorney's fees.

Pursuant to their July 20, 1987 divorce, the parties entered into a Property Settlement Agreement ("PSA") which was approved by the trial court and made a part of the final decree. The pertinent portion of the PSA provides as follows:

6. It is agreed that each shall keep his or her Social Security checks and that the Husband will keep the entirety of his military disability pay.

7. It is further agreed that the military retirement of the Husband will be divided and adjusted with the Wife's share considered as alimony paid by the Husband and as a further division of assets. The Wife shall receive one-half of the military retirement pay including, but not limited to, any future and prospective cost of living adjustments in said military retirement pay so that if the military retirement pay is increased by the government, the Wife shall receive a proportionate one-half share. The Wife's one-half proportionate share shall be adjusted for the costs of the "Survivor Benefit Plan" and the "Retired Serviceman's Family Cost." Should the costs for the Survivor Benefit Plan or the Retired Serviceman's Family Protection Plan fluctuate, these changes shall be reflected in the amounts to be deducted from the Wife's share.

The payments to the Wife shall begin on the first day of August, 1987, and shall be paid by the Husband to the Wife by the 10th day of each month thereafter. The Husband shall execute such documents as are required so that a direct deposit from the Husband's bank account (of his choice) shall be made to the Wife's bank account (of her choice). The Husband shall make available to the Wife at the end of each calendar year a statement which shall show the amount of military retirement pay received by the Husband. Further, the Husband agrees to take no action which would in any way endanger the military retirement. The alimony, as set forth in this paragraph, ceases upon the Wife's remarriage, or in the event someone of the opposite sex, other than an immediate relative, moves in with the Wife.

At the time of the divorce, the Husband was receiving 20% disability pay as a part of his

---

[1]Court of Appeals Rule 10(b):

The Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion, it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in a subsequent unrelated case.

retirement all of which he was to keep under the PSA as incorporated in the final decree. This disability amounted to $166.00 per month. In early 1995, the Husband underwent a physical examination which resulted in the Department of Veteran's Affairs increasing his disability rating to 60%.[2] It is unclear from the record whether the department called the Husband in for reevaluation or whether the Husband voluntarily went to be reevaluated. In any event, as a result of the change in his disability, the Husband elected to sacrifice a portion of his military retirement pay in exchange for receiving a larger portion in disability pay.[3]

On 2 October 1995, the Wife filed a "petition for contempt and to amend" in which she alleged that the Husband had, in violation of the parties' divorce decree, "endangered" his military retirement by having his disability rating increased from 20% to 60%. The Wife also alleged that when the Husband informed her of the increase in his disability rating, he requested she refund any overpayments made by the Husband from the effective date of the increased disability. The Wife's prayer for relief included, inter alia, that the court hold the Husband in contempt for adversely affecting the Wife's ability to receive alimony and that an order be entered requiring the Husband to share 80% of his gross military income with the Wife.

On 22 November 1995, the Husband answered and filed a counter-claim in which he claimed, inter alia, that the court should award him the overpayment paid by him to the Wife since 1 July 1993 or that the court should credit him for that amount and then set the appropriate amount for the Husband to pay as alimony in the future. The Husband contends that under federal law and the Final Decree of Divorce, the court can not force the Husband to share any of his disability pay with the Wife.

Following an evidentiary hearing, the court entered an order finding the Husband to be in

---

[2] A 60% disability rating equals $730.00 per month. This was effective 1 July 1993.

[3] 38 C.F.R. § 3.750(a) (1996) provides in pertinent part that "[e]xcept as provided in paragraph[] c . . ., any person entitled to receive retirement pay based on service as a member of the Armed Forces . . . may not receive such pay concurrently with benefits payable under laws administered by the Department of Veterans Affairs." Paragraph c states that "[a] person specified in paragraph (a) of this section may receive compensation upon filing with the service department concerned a waiver of so much of his (or her) retirement pay as is equal in amount to the compensation to which he (or she) is entitled."

civil contempt by disobedience of the Final Decree of Divorce. The court found that the Husband had "endangered" his military retirement income by allowing his disability rating to be increased to 60% and by waiving a portion of his retirement pay to have such amount redesignated as disability pay. The court then awarded the Wife $1,668.47 for the arrearage from October 1995 through February 1996. Finding that there was justification and request by both parties for modification of the payment procedure, the court formulated the method by which the alimony amount would be calculated beginning in March 1996 as follows:

| | | | |
|---|---|---|---|
| GROSS PAY | $ | | 4,799.00 |
| MINUS VA WAIVER | | | - 170.00 |
| | | | 4,629.00 |
| DIVIDED BY 2 | | | 2,314.50 |
| | | | |
| RESPONDENT'S CREDIT FOR SURVIVOR BENEFIT PLAN | | | - 272.47 |
| | | | |
| PAID DIRECTLY TO PETITIONER | $ | | 2,042.03 |

Lastly, the court awarded the Wife attorney's fees as alimony in solido in the amount of $3,687.50.

The Husband has filed his notice of appeal and presents two issues for this court's consideration: 1) Whether the trial court erred by misinterpreting the language of the final decree and, 2) Whether the trial court erred in refusing to obey federal law which calls for the Husband's disability income to be exempted from any monies paid to his former wife as spousal support.

I.

The Husband first contends that the trial court erroneously interpreted the language of the final decree. Citing case law which holds that words are to be given their ordinary meaning, *Winter v. Smith*, 914 S.W.2d 527, 538 (Tenn. App. 1995), the Husband argues that because paragraph 6 of the final decree says that "the Husband will keep the entirety of his military disability pay," it means exactly that. The wording refers to disability pay in its entirety regardless of the amount which was in no way directed to remain static or constant.

However, a cardinal rule of contract construction is that the terms of an agreement are to be

4

interpreted by consideration of the agreement in its entirety. *See Cocke County Bd. Of Highway Comm'rs v. Newport Utils. Bd.*, 690 S.W.2d 231, 237 (Tenn. 1985); *Cookville Gynecology & Obstetrics, P.C. v. Southeastern Data Sys., Inc.*, 884 S.W.2d 458, 462 (Tenn. App. 1994). Thus, paragraph 6 must be read in conjunction with paragraph 7 which states that the Husband "agrees to take no action which would in any way endanger the military retirement." By definition, to endanger is "to place in jeopardy; to expose to loss or injury." Websters Dictionary for Everyday Use, 126 (1986).

It was necessary for the Husband to voluntarily waive a dollar amount of his military retirement pay in order to receive the equivalent dollar amount as an increase in his disability pay from the Department of Veterans Affairs. *See* Title 38, CFR sec. 3.750(c). A benefit to the Husband was that the increased monthly sum of money designated as disability pay was tax free. However, the Husband's actions effected a reduction in the amount received from the Department of the Air Force as military retirement and thus in the one-half share of the military retirement received by the Wife pursuant to the PSA. We hold that these actions exposed the military retirement to loss, or endangered it, in violation of the Husband's obligation as found in paragraph 7 of the PSA. The trial court was therefore correct in his finding.

II.

Next, the Husband asserts that the trial court's order contravenes federal law which calls for his disability income to be exempted from any monies paid to an ex-spouse as spousal support. To support his argument, the Husband relies upon *Mansell v. Mansell*, 490 U.S. 581 (1989), involving the interpretation of the Uniform Services Former Spouses Protection Act (FSPA). That act grants state courts the authority to treat the "disposable retired pay" of a military member as community property for purposes of the division of property in a divorce case such as this. 10 U.S.C.A. § 1408(c)(1) (Supp. 1996). "Disposable retired pay" excludes any amounts waived in order to receive disability benefits. 10 U.S.C.A. § 1408(a)(4)(B) (Supp. 1996); *Mansell*, 490 U.S. at 585.

The parties in *Mansell* had "entered into a property settlement which provided, in part, that

5

Major Mansell would pay Mrs. Mansell [50%] of his total military retirement pay, including that portion of retirement pay waived so that Major Mansell could receive disability benefits." *Mansell*, 490 U.S. at 586. The court found the agreement to be in violation of the FSPA which does not grant courts the authority to treat military retirement pay that has been waived to receive disability benefits as property divisible upon a divorce. *Id*. at 689. We find the situation in *Mansell* is distinguishable from this one in that *Mansell* involved an attempt to divide disability payments being received by a veteran at the time of the divorce.

The Ulrichs, on the other hand, did not attempt by their agreement to divide Mr. Ulrich's disability payments. Indeed, the PSA entered into by the parties in July 1987 recognized that the Husband was allowed to keep the entirety of his military disability pay, which, at that time, was the amount corresponding to a 20% disability rating. In order to protect the Wife, the Husband agreed that he would take no action which would in any way endanger the military retirement which was to be split equally by the parties. As for any change in the amount to be received by the Wife, the agreement contemplated only increases for the cost of living.

Despite the agreement, the Husband admits that he sought an increased disability rating and that he waived an increased amount of his military retirement in order to receive the increased disability pay, thereby reducing the amount of retirement pay subject to equal division with the Wife. The trial judge's order finding the Husband in contempt modified the payment procedure to effectuate the parties' intent as expressed in the PSA. Therefore, the new amount to be paid the Wife is the same as she would have received had the Husband not endangered the military retirement. *See McHugh v. McHugh*, 861 P.2d 113 (Idaho App.1993) (where, following the increase in a former husband's military disability pay and consequent decrease in his retirement pay, the trial court increased the percentage that the former wife received of the military retirement with the express purpose of restoring the amount that the parties had agreed she would receive in their settlement agreement).

We conclude that, under these circumstances, the trial court did not act contrary to the provisions of *Mansell*. If *Mansell* were read to prohibit the trial court's actions, the Husband could

6

effectively deny the Wife her share of the military retirement pay that the parties agreed upon at the time of their divorce. Carried to its logical conclusion, this position means that the Husband might one day be able to elect to receive 100% disability pay thereby causing the Wife to receive nothing. In *Murphy v. Murphy*, 787 S.W.2d 684 (Ark. 1990), the Arkansas Supreme Court addressed a situation in which a former husband, who was ordered by the trial court to pay his ex-spouse a dollar amount, received his entire monthly military benefits as disability pay. The court concluded that the wife was not entitled to direct payments for alimony under the FSPA because the husband had no disposable retired pay as defined by the law. However, it upheld the trial court's order stating that "such conclusions do not preclude the trial court from ordering [the husband] to pay alimony, and once awarded, the FSPA does not relieve a retiree from paying such alimony obligations." *Id.* at 685 (citing 10 U.S.C. § 1408(e)(6) (1982)).

In this case, the trial court did not order the Wife to be paid directly by the military out of the Husband's disability pay. It simply set up a system by which the Husband will receive all of the disability and retirement pay, a portion of which he must pay directly to the Wife. This portion is to be computed in a manner which gives effect to the parties' PSA as incorporated in their July 1987 divorce order. The judgment of the trial court is therefore affirmed, and the cause is remanded to the trial court for any further necessary orders. Costs on this appeal are taxed against defendant/appellant, William August Ulrich, for which execution may issue if necessary.

_____
SAMUEL L. LEWIS,  JUDGE

CONCUR:

_____
HENRY F. TODD, PRESIDING JUDGE, M.S.

_____
WILLIAM C. KOCH, JR., JUDGE