IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs August 1, 2017

## DAVID C. JAYNE v. BASS ANNIE COSMETIC BOAT REPAIR

**Appeal from the Circuit Court for Shelby County**
**No. CT-005058-12  Robert L. Childers, Judge**

_____

**No. W2016-02012-COA-R3-CV**

_____

David C. Jayne ("Jayne") appeals the trial court's entry of a judgment against him for breach of contract for failure to pay Bass Annie Cosmetic Boat Repair ("Bass Annie") for repairs made to his boat. Jayne entered into a contract with Bass Annie for the repair of his damaged boat. Before the agreed-upon repairs were completed, Jayne went to Bass Annie to check on the boat. After inspecting the boat, Jayne instructed Bass Annie to stop the repairs and return the boat to him. An argument ensued, and Jayne alleges he was assaulted by a Bass Annie employee. Both parties filed claims in the general sessions court which were subsequently appealed to circuit court. Following a *de novo* trial in the circuit court, the trial court dismissed Jayne's claims and awarded Bass Annie damages for breach of contract for the work completed on the boat. Jayne appeals.  The judgment of the trial court is affirmed, and the case is remanded for further proceedings.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded

ARNOLD B. GOLDIN, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and JOHN W. MCCLARTY, J., joined

Scott A. Kramer, Memphis, Tennessee, for the appellant, David C. Jayne.

Bass Annie Cosmetic Boat Repair, Appellee[1].

_____

[1] Appellee did not file a brief.

## I. BACKGROUND AND PROCEDURAL HISTORY

Bass Annie Cosmetic Boat Repair ("Bass Annie," or "Appellee") is a full service boat maintenance company founded in 1990 by Annie Rice. Ms. Rice testified that Bass Annie serves customers from twelve states and thirteen boat manufacturing companies. Additionally, Ms. Rice testified that she has repaired several thousand boats over the course of her twenty-seven year career as sole owner and operator of Bass Annie and that Bass Annie is capable of repairing boats of all sizes—from a "John boat" to a one hundred and twenty foot yacht.

In July 2012, Appellant David C. Jayne damaged his boat and brought it to Bass Annie for repairs. Ms. Rice estimated the repair of Mr. Jayne's boat would cost $9,592.15. After receiving Ms. Rice's estimate, Mr. Jayne signed the estimate and authorized Ms. Rice to move forward with the necessary repairs.

On August 16, 2012, Mr. Jayne brought Mr. Jimmy Lamb, his expert, to visit Bass Annie to inspect the repairs to Mr. Jayne's boat. Although the repairs were not complete, Ms. Rice invited Messrs. Jayne and Lamb into the warehouse. Mr. Lamb informed Mr. Jayne that he did not think Bass Annie's employees were repairing Mr. Jayne's boat in a workman-like manner. When Messrs. Jayne and Lamb confronted Bass Annie employees, an argument ensued. The argument escalated, and Molly Smith, a Bass Annie employee, allegedly procured a handgun and pointed the gun towards Messrs. Jayne and Lamb. At this point, Ms. Rice called the police.

Following this incident, Mr. Jayne told Ms. Rice to stop repairs on his boat, and he attempted to take immediate possession of the boat. Ms. Rice refused to return the boat until Mr. Jayne paid for the labor and materials that Bass Annie had already invested.

On August 21, 2012, Mr. Jayne brought an action in the Shelby County General Sessions Court to recover the boat and for damages for substandard work and assault. On October 2, 2012, Annie Rice, Bass Annie Cosmetic Boat Repair, Kirsty Smith, and Molly B. Smith filed a counter-complaint in the General Sessions Court for assault, battery,

---

[2] Rule 10 of the Tennessee Court of Appeals provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", and shall not be cited or relied on for any reason in any unrelated case.

breach of contract, fraud, misrepresentation, abuse of court process, and tortious interference with a contract. On October 31, 2012, agreed judgments for the defendants "without proof" were entered by the judge in the General Sessions Court. Mr. Jayne and Bass Annie timely appealed their respective General Sessions judgments to the Shelby County Circuit Court. On August 5, 2015, Bass Annie filed a pleading titled Response To Action To Recover Personal Property And Amended Civil Warrant in the Circuit Court, denying that the boat was improperly repaired and seeking damages against Mr. Jayne in the amount of $9,292.15 for breach of contract. The trial court, in a *de novo* trial, found that the parties had a valid contract, and that Bass Annie had partially met its obligation under the contract when Mr. Jayne ordered Bass Annie to stop working on his boat. Based on the work completed, the trial court awarded Bass Annie a judgment against Jayne of $6,495.[3] Mr. Jayne appeals.

## II. ISSUES PRESENTED

Mr. Jayne raises two issues for review. However, we perceive that there are three dispositive issues, which we state as follows:

1.      Whether Bass Annie is responsible for the alleged assault committed by Ms. Smith under the doctrine of respondeat superior.

2.      Whether the trial court erred in holding that Mr. Jayne breached the parties' contract and owes Bass Annie damages.

3.      Whether the trial court erred in holding that Mr. Jayne failed to meet the burden of proof in his contract claim against Bass Annie.

## III. STANDARD OF REVIEW

Tennessee Rule of Appellate procedure 13(d) governs our review of the trial court's findings in a bench trial.[4] *See, e.g., Garrett v. City of Memphis*, 327 S.W.3d 37, 40 (Tenn. Ct. App. 2010). This Court reviews the trial court's factual findings *de novo* on

---

[3] The trial court also stated in its oral decision that Jayne would have been liable to Bass Annie for storage fees for the boat but that Bass Annie had waived them.

[4] Tennessee Rule of Appellate Procedure 13(d) states, in relevant part, as follows:

Findings of Fact in Civil Actions. Unless otherwise required by statute, review of findings of fact by the trial court in civil cases shall be *de novo* upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise.

the record, with a presumption of correctness. *Id.* We may not disturb the trial court's findings unless we determine "that the aggregate weight of the evidence demonstrates that a finding of fact other than the one found by the trial court is more probably true." *Williams v. City of Burns*, 465 S.W.3d 96, 108 (Tenn. 2015) (*citing Nashville Ford Tractor, Inc. v. Great Am. Ins. Co.,* 194 S.W.3d 415, 425 (Tenn. Ct. App. 2005)). This Court reviews questions of law *de novo* with no presumption of correctness. *See Garrett*, 327 S.W.3d 37, 40 (*citing Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. Ct. App. 2010)).

## IV. ANALYSIS

### A. Respondeat Superior

To hold a principal liable under the doctrine of respondeat superior, a plaintiff must prove: (1) that the person causing the injury was the principal's agent; and (2) that the person causing the injury was acting on the principal's business and acting within the scope of his or her employment when the injury occurred. *See Tucker v. Sierra Builders*, 180 S.W.3d 109, 120 (Tenn. Ct. App. 2005). It is undisputed that Ms. Smith was an employee of Bass Annie at the time of the incident with the gun. Thus, the pivotal issue is whether Ms. Smith was acting within the course and scope of her employment when she pointed the gun at Mr. Jayne and ordered him to leave. The phrase, "within the course and scope of employment," refers to acts of an employee committed while engaged in the service of the employer or while about the employer's business. *See Thurmon v. Sellers*, 62 S.W.3d 145, 152 (Tenn. Ct. App. 2001). Factors that may be considered when determining whether an employee acts within the scope of his or her employment include: (1) whether the conduct is of the kind the employee is employed to perform; (2) if it is actuated, by a purpose to serve the master; (3) if force is intentionally used against another, whether the use of force is reasonably expected by the master; (4) whether the act is commonly done by such servants; (5) whether the act is outside the enterprise of the master; and (6) whether the master has reason to expect that such an act will be done. *See generally Tenn. Farmers Mut. Ins. Co. v. Am. Mut. Liab. Ins. Co.*, 840 S.W.2d 933, 938 (Tenn. Ct. App. 1991) (quoting Restatement (Second) of Agency §§ 228–29).

Here, the trial court made the following findings concerning Mr. Jayne's respondeat superior claim:

> While [Mr. Jayne] probably proved that there was an assault by Ms. Molly Smith against [Mr. Jayne], [Mr. Jayne] failed to prove that [Bass Annie] was legally responsible for the assault.

- 4 -

Mr. Jayne argues that the trial court's finding that he did not establish a *prima facie* case for respondeat superior was erroneous. We disagree.

The procurement of a gun was clearly outside the scope of Ms. Smith's employment as a boat repair person. While Ms. Rice conceded that she was aware that Ms. Smith possessed a gun permit, there is no evidence that Ms. Rice knew Ms. Smith would procure the gun or use it to threaten Mr. Jayne. Furthermore, there is no evidence that Ms. Rice condoned Ms. Smith's actions. In fact, it was Ms. Rice who called the police in an effort to diffuse the situation. From the record and the totality of the circumstances, we conclude that the trial court did not err in its determination that Mr. Jayne failed to make a *prima facie* case for recovery under the theory of respondeat superior.

### B. Breach of Contract

The trial court held that Bass Annie met its burden of proof in establishing that Mr. Jayne breached the parties' contract by ordering Bass Annie, through Ms. Rice, to stop repairing his boat and refusing to pay her for the work completed. Accordingly, the trial court awarded Bass Annie damages. On appeal, Mr. Jayne argues that the evidence preponderates against the trial court's finding that he breached the contract. Further, he argues that, even if he did breach the contract and Bass Annie is entitled to damages, the trial court's determination of the amount of damages is not supported by the weight of the evidence. Mr. Jayne's argument is contradicted by his own testimony and the record as a whole.

"The essential elements of any breach of contract claim include (1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract." *ARC LifeMed, Inc. v. AMC–Tenn., Inc.,* 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005) (*quoting Custom Built Homes v. G.S. Hinsen Co., Inc.,* No. 01A01-9511-CV-00513, 1998 WL 960287, at *3 (Tenn. Ct. App. Feb. 6, 1998)).

The parties do not dispute that they entered into a contract for the repair of Mr. Jayne's boat. Mr. Jayne testified that: (1) he took his boat to Bass Annie to have it repaired; (2) Bass Annie provided him with an estimate stating that it would cost approximately $9,592.15 to repair his boat; (3) he authorized Bass Annie to repair the boat after his insurance company approved the estimate; (4) his insurance company provided him with a check for the repairs; (5) Bass Annie worked on the boat for approximately three-to-four weeks before Mr. Jayne told Ms. Rice to stop repairing his boat; and (6) Mr. Jayne refused to pay for the supplies or labor Bass Annie invested. Mr.

Jayne testified that Bass Annie was entitled to be paid for the repairs it had completed to date. Despite his testimony, he has refused to pay. Specifically, Mr. Jayne testified:

> Q: Would you agree with me the only reason you don't have your boat is that you failed to pay for repairs that were done so far? You just chose not to pay or not go get [the boat]?
>
> A: I would agree with you 100 percent.
>
> * * *
>
> Q [to Mr. Jayne from Appellee's attorney]: So you want your boat and not pay her [sic] anything for materials or labor?
>
> A: That is 100 percent correct.
>
> * * *
>
> Q [to Mr. Jayne from *his* attorney]: When Mr. Hodum was asking you about paying Ms. Rice for the repairs that she had done and you refused to [pay], *there was a disagreement as to what should have been paid; isn't that correct? You are offering to pay her for the work that was done through August 16?*
>
> A. *That is correct, yes.*
>
> * * *
>
> Q [to Mr. Jayne from *his* attorney]: And did you instruct Ms. Rice on August 16 to stop doing work on your boat and to do no further work on the boat, *that you wanted to pay for the work that was done up through the 16th* and then take your boat elsewhere to be repaired?
>
> A: *That is exactly what I said on more than one occasion.*

(emphasis added). Likewise, Ms. Rice testified that she entered into the agreement with Mr. Jayne in good-faith reliance on his promise to pay once the repairs were completed, and she would have completed the repairs in an acceptable manner but for Mr. Jayne's interference.

When Mr. Jayne repudiated the contract with Bass Annie prematurely, he ran the risk that Bass Annie was performing the repairs in a workman-like manner, and, consequentially, that he would be liable as the first party to breach the contract by refusing to pay her. "In cases where both parties have not fully performed, it is necessary for the courts to determine which party is chargeable with the first uncured material

breach." *See McClain v. Kimbrough Constr. Co.*, 806 S.W.2d 194, 200 (Tenn. Ct. App. 1990). As reflected by the testimony excerpted above, Mr. Jayne clearly acknowledges that he breached the contract by failing to pay Bass Annie after ordering Ms. Rice to stop working on his boat before she finished the agreed-upon repairs. Mr. Jayne attempts to defend his repudiation of the contract, citing his belief that Bass Annie was not repairing his boat in a workman-like manner; however, the trial court found that he did not carry his burden of proof on this issue. Because Mr. Jayne clearly acknowledged he owed Bass Annie for the work performed, we cannot conclude that the trial court erred in determining that: (1) Mr. Jayne breached the contract by failing to pay Bass Annie; and (2) Bass Annie was entitled to damages based on its reliance on Mr. Jayne's promise to pay for the repairs.

Mr. Jayne also contests the amount of damages. "In cases where the trial court is hearing the case without a jury, we review the amount of damages awarded by the trial court with the presumption that it is correct, and we will alter the amount of damages only when the trial court has adopted the wrong measure of damages or when the evidence preponderates against the amount of damages awarded." *See Beaty v. McGraw,* 15 S.W.3d 819, 828–29 (Tenn. Ct. App. 1998); Tenn. R. App. P. 13. Having concluded that the trial court did not commit reversible error in finding that Bass Annie should be compensated for the repairs it completed on Mr. Jayne's boat, the only question is whether the amount of damages is supported by the record.

As to the amount of damages, Ms. Rice testified concerning the scope of repairs made to Mr. Jayne's boat and the amount Bass Annie charges for those services. Ms. Rice also testified that, at the time Mr. Jayne told her to stop repairing his boat: (1) Bass Annie had been repairing the boat for three-to-four weeks; (2) Bass Annie had invested at least $3,500 in materials; (3) the original estimate for the full repair and the amount of the contract was $9,592.15; and (4) approximately 85-90% of the contemplated repairs had been completed when Mr. Jayne ordered Bass Annie to stop work.

Mr. Jayne argues that the trial court erred in permitting Ms. Rice to testify as an expert. Therefore, he argues, the trial court should not have relied on her testimony to support its conclusion that he breached the agreement and owed Bass Annie damages. We disagree.

Ms. Rice testified that she has been repairing bass boats for professional bass fishermen since 1988. She further testified that she has been the sole owner and operator of Bass Annie since it opened in 1990 and that Bass Annie has repaired thousands of boats of all makes and models from "John" boats to a 120 foot yacht. Finally, Ms. Rice testified that she was familiar with the standards that are set within the boat repair industry in repairing boats in a reasonable workman-like manner and that she had never

had a complaint about her work in 30 years other than this case. In view of Ms. Rice's 30 years of experience in the boat repair business and as the sole owner and operator of Bass Annie, we cannot conclude that the trial court abused its discretion in allowing her to testify concerning the repairs made to Mr. Jayne's boat or their costs. From our review, the preponderance of the evidence supports the trial court's determination that Mr. Jayne owes Bass Annie for the costs of the repairs that Ms. Rice completed before she was told to stop.

### C. Appellant Failed to Meet his Burden of Proof

Mr. Jayne argues that the trial court erred in determining that he failed to prove, by a preponderance of the evidence, that Bass Annie breached the parties' contract by failing to complete the repairs to his boat in a workman-like manner. "The essential elements of any breach of contract claim include: (1) the existence of an enforceable contract; (2) nonperformance amounting to a breach of the contract; and (3) damages caused by the breach of the contract." *ARC LifeMed, Inc. v. AMC–Tenn., Inc.,* 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005) (*quoting Custom Built Homes v. G.S. Hinsen Co., Inc.,* No. 01A01-9511-CV-00513, 1998 WL 960287, at *3 (Tenn. Ct. App. Feb. 6, 1998)). A warranty of good workmanship and materials is implied in all contracts, unless expressly disclaimed. *See, e.g., Fed. Ins. Co. v. Winters*, 354 S.W.3d 287, 291 (Tenn. 2011). When a party decides to cancel a contract based on his or her belief that the other party is in breach, the repudiating party runs the risk that the other party may not be in breach. *See McClain*, 806 S.W.2d at 200.

The trial court concluded that Mr. Jayne failed to establish Bass Annie breached their contract by failing to make the repairs in a workmen-like manner. On appeal, Mr. Jayne specifically contests the trial court's finding that Mr. Lamb's testimony was not credible. In an appeal from a bench trial, this Court gives "great weight" to the trial court's credibility determinations. *See Morrison v. Allen*, 338 S.W.3d 417 (Tenn. 2011). Because a trial court is able to observe a witness' demeanor and evaluate other indicators of credibility, we defer to a trial court's credibility determination unless there is real, clear, concrete, and convincing evidence compelling a contrary conclusion. *Id*.

Here, the trial court orally stated that it was "not convinced by [Mr. Jayne's] expert that [Bass Annie's] work was not done in a workman like manner." Fact-finders "may place whatever weight they choose upon such [expert] testimony and may reject it, if they find that it is inconsistent with the facts in the case or otherwise unreasonable." *Cocke Cty. Bd. of Highway Comm'rs. v. Newport Utilities Bd.*, 690 S.W.2d 231, 235 (Tenn. 1985) (citation omitted). Mr. Lamb testified to the following facts: (1) his primary experience in the boat repair industry was as an insurance surveyor in the 1970s; (2) his only professional training was at Illinois Technological School in 1977; (3) by

trade, he is in the automobile repair business; (4) he did not see Mr. Jayne's boat before Bass Annie began repairs; (5) Ms. Rice and Mr. Lamb had a personal dispute in the 1980s over the repair of her boat because he used automotive paint on the fiberglass boat; and (6) he could not see the inside of Mr. Jayne's boat (the area Bass Annie had primarily been repairing) from where he was standing when he visited the warehouse on August 16, 2012. When asked by Bass Annie's attorney if he actually repaired boats, Mr. Lamb stated, "I repair[ed] them, you know, on the side, as a hobby." Given the deference afforded to the trial court's credibility determinations and the evidence, we cannot conclude that the trial court's finding, as to Mr. Lamb's credibility, constitutes reversible error.

Mr. Jayne submitted no proof other than his own testimony and the testimony of his expert in support of his argument that Bass Annie was not completing the repairs of his boat in a workman-like manner. Having found Mr. Lamb's testimony not to be credible, the trial court concluded that Mr. Jayne failed to prove Bass Annie breached the parties' contract. From our review, the evidence does not preponderate against the trial court's ultimate determination.

## V. CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court. The case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed to the Appellant, David C. Jayne, and his surety, for all of which execution may issue if necessary.

_____
ARNOLD B. GOLDIN, JUDGE

- 9 -