# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
March 29, 2012 Session

## DEANNA LYNNE DODD v. MICHAEL THOMAS DODD

**Appeal from the General Sessions Court for Wilson County**
**No. 2009DC153      John Gwin, Judge**

**No. M2011-02147-COA-R3-CV - Filed August 6, 2012**

In this post-divorce proceeding, the mother of the parties' only minor child filed two motions to alter or amend the divorce decree in order to clarify the parties' obligations under the marital dissolution agreement regarding their 2009 income tax returns, and two petitions for civil contempt. The contempt petitions alleged that the father failed to make timely child support payments and failed to reimburse the mother for mortgage payments, medical expenses, and school-related expenses for the parties' child. The trial court denied the motions to alter or amend, finding that the amendment sought by the mother was unnecessary and that the father breached the tax provision of the MDA as written. The court also denied the petitions for civil contempt, finding that the father purged himself of the contempt prior to hearing on the petitions. The court ordered the father to pay the mother $10,302.36 plus post-judgment interest for the tax liability she incurred due to the father's refusal to file a joint tax return and $3,500 for the attorney's fees the mother incurred in filing the petitions for contempt. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the General Sessions Court Affirmed

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

Helen Sfikas Rogers and Siew-Ling Shea, Nashville, Tennessee, for the appellant, Michael Thomas Dodd.

Timothy T. Ishii and Phillip R. Robinson, Nashville, Tennessee, for the appellee, Deanna Lynne Dodd.

**OPINION**

Deanna Lynne Dodd ("Mother") filed a complaint for divorce from Michael Thomas Dodd ("Father") on December 30, 2009. The parties had been married for approximately ten years and had one minor child. Although they owned several residential properties, the parties continued to live together during the divorce proceedings and they constantly had problems. On August 2, 2010, upon Mother's motion, the trial court entered an Order on Temporary Support and Parenting Time ("Temporary Order). The Temporary Order addressed a myriad of issues that had been escalating between the parties including, *inter alia*, respecting one another's privacy and space within the marital residence, dividing the household bills and chores, and how not to interfere with the other party's parenting time.

For purposes of this appeal, the most important issue addressed in the Temporary Order was the parties' federal income tax return for 2009. Father is a Certified Public Accountant and was the primary breadwinner. At the time of the marriage, Wife worked full-time as a OB/Gyn Nurse Practitioner, but subsequently quit to begin working part-time for herself as a realtor and interior designer. During their ten years of marriage, Father prepared the parties' tax returns and they always filed joint returns. The Temporary Order provided:

> The Court finds that while it does not have the authority to require the parties to file a joint federal income tax return for 2009, the Court finds that if either party elects to file . . . separately, a calculation shall be made on the party's respective incomes, expenses and deductions filing separately and jointly. The party who refuses to file jointly will be required to pay to the other party any extra expenses that result to that party from not filing jointly.

The parties continued to have a strained relationship and Father refused to present a joint tax return to Mother for their 2009 return. As a result, Mother hired an accountant to prepare her return and Mother filed an individual tax return for 2009. By filing individually, Mother was required to pay an additional $10,302.36 in federal income tax liability.

The divorce complaint was set to be tried on March 28 & 29, 2011; however, during mediation on March 10, 2011, the parties were able to agree to a Permanent Parenting Plan for their minor child and a Marital Dissolution Agreement ("MDA"). With regard to the 2009 tax return, the MDA states, "The parties will file an amended form 1040 tax return for 2009, to be prepared by [Father], and any refund will be awarded to [Mother]." The trial court approved the parties' agreements, and both were incorporated into the Final Divorce Decree, which was entered March 14, 2011.

The cooperation was short-lived. After the entry of the Final Divorce Decree, Mother learned that Father failed to pay the March 2011 mortgage payment of $1,580.08 as required in the MDA. She also learned that Father failed to pay his share of the parties' child's school fees and medical bills. Further, Father persisted in refusing to provide the 2009 joint tax return for the court's review and indicated to Mother that, under the language of the MDA – which did not use the term "joint" – he was not required to do so. He also informed Mother that he found her business records were inadequate and that as a CPA, he could not attest to the accuracy of a tax return prepared in reliance on her records.

Father's acts and omissions prompted Mother to file a Motion to Alter or Amend Final Decree of Divorce on April 13, 2011, to include the word "joint" in the provision regarding the 2009 tax return. Then she filed a Petition for Civil Contempt on May 10, 2011 for Father's failure to prepare the joint return and his failure to pay the aforementioned expenses. Mother also filed an Amended Motion to Alter or Amend on August 12, 2011, and a Motion to Amend Pending Contempt Petition on August 17, 2011. The resolution of these motions is the subject of this appeal.

A hearing on the motions and petitions was held on August 23, 2011. By order entered September 23, 2011, the trial court denied Mother's Motions to Alter or Amend, finding that the requested changes were not necessary because the MDA already required Father to file a joint tax return with Mother for 2009. The trial court also denied the Petitions for Contempt, finding that by the date of the hearing, Father had cured his contempt by paying most of his financial obligations. However, the trial court found that Mother was entitled to a judgment for her tax liability and that, under the MDA, Mother was entitled to her reasonable attorney fees incurred in prosecuting the Petitions for Contempt. Thus, the court awarded Mother a money judgment against Father for $10,302.36 for her tax liability and $3,500 in attorney's fees. The court denied Mother's request that Father be ordered to pay child support by wage assignment, but admonished Father to timely satisfy his financial obligations under the MDA and the Parenting Plan in the future. Father was also admonished to stop referring to Mother by her maiden name.

Father filed this appeal in which he raises several overlapping issues. He contends the trial court erred in hearing the Motions to Alter or Amend at the same time as the Petitions for Civil Contempt. He also asserts the money judgments entered against him for Mother's tax liability and attorney's fees should be vacated because they were based on the trial court's erroneous finding of civil contempt, which, Father asserts, was based on the trial court's erroneous interpretation of the MDA as incorporated into the Final Divorce Decree.

Both parties also seek an award for attorney's fees incurred on appeal.

**ANALYSIS**

**I.**

Father contends the trial court erred by considering the Rule 59 Motions to Alter or Amend the Final Decree of Divorce during an evidentiary hearing on the Petitions for Civil Contempt; however, Father cites no authority to support his assertion that the trial court's decision to conduct the hearings at the same time constitutes error and we are aware of no such authority.

Father's argument on this issue, as we understand it, is that by considering both motions during the same hearing, the trial court could have substantively modified the Final Decree of Divorce and simultaneously held Father in civil contempt for violating the newly amended Final Decree of Divorce. As this opinion explains, the trial court did neither. Thus, we find no error.

**II.**

Father contends the trial court erred in finding him in civil contempt of the Final Decree of Divorce, the MDA, and the permanent parenting plan because, he asserts, the court's decision was solely based upon conclusory allegations and argument of counsel, and the court's findings of fact are unsupported by any testimony or documentary evidence.

Civil contempt is imposed at the insistence and for the benefit of the party who has suffered a violation of rights and the purpose of civil contempt is to coerce compliance with the court's orders. *Doe v. Bd. of Prof'l Responsibility of Sup. Ct. of Tenn.,* 104 S.W.3d 465, 473-74 (Tenn. 2003); *see also Overnite Transp. Co. v. Teamsters Local Union No. 480*, 172 S.W.3d 507, 510 (Tenn. 2005) (stating that a civil contempt action is generally brought to enforce private rights).[1]

> Civil contempt occurs when a person does not comply with a court order and
> an action is brought by a private party to enforce rights under the order that has
> been violated. Punishment for civil contempt is designed to coerce compliance

---

[1] The substantive difference between civil contempt and criminal contempt is that criminal contempt is not used to enforce a private right of a party, instead, criminal contempt is used to "preserve the power and vindicate the dignity and authority of the law" as well as to preserve the court "as an organ of society." *Black v. Blount*, 938 S.W.2d 394, 398 (Tenn. 1996); *see also Thigpen v. Thigpen*, 874 S.W.2d 51, 53 (Tenn. Ct. App. 1993). Another substantive difference is that in criminal contempt proceedings, "the defendant is presumed to be innocent and must be proven guilty beyond a reasonable doubt." *Doe,* 104 S.W.3d at 474 (citing *Shiflet v. State*, 400 S.W.2d 542, 543 (Tenn. 1966)).

with the court's order and is imposed at the insistence and for the benefit of the private party who has suffered a violation of rights. Also, in civil contempt cases, the quantum of proof necessary to convict is a preponderance of the evidence.

*Doe*, 104 S.W.3d at 474 (internal citations omitted).

Father asserts on appeal that he was held in civil contempt by the trial court; however, we do not find such a ruling in the record. Ironically, Mother even states in her brief: "It is unclear from the Trial Court's findings that it found the [Father] in civil contempt." In another section of her brief Mother states:

Again, it is [Father's] contention that he was held in civil contempt by the trial court. As the appellant, [Father] frames the issues the appellee has to respond to and is not [Mother's] contention that [Father] was found in civil contempt but rather that he was found to have breached material portions of the MDA and the court invoked the remedies clause of the MDA to award money damages.

In its written ruling by correspondence dated August 30, 2011 addressed to counsel for the parties, the trial court made the following finding that is pertinent to this issue:

1. Father has purged himself of most, if not all, of the monetary contempt issues prior to trial.

2. Father did not purge himself in a timely manner, necessitating Mother's filing of the contempt petition and the attorney fees attendant thereto.

The record supports a finding that some of Father's acts and omissions were in violation of the trial court's orders when the petitions for civil contempt were filed, however, as the trial court correctly found, he purged himself prior to the hearing. Thus, he was not in civil contempt at the time of the hearing. *See Doe*, 104 S.S.3d at 473-74 (the office of civil contempt is to coerce compliance with the court's orders for the benefit of the private party who has suffered a violation of rights, when the contemnor cures the contemptuous conduct, he or she is no longer in civil contempt).

We note, however, that the trial court did not hold Father in civil contempt. As Mother correctly states in her brief, nowhere in the court's ruling is there a finding of contempt.

III.

Father also takes issue with the money judgments the trial court awarded to Mother, which, he asserts, flow from the trial court's erroneous findings of civil contempt. As explained in the preceding section, we have concluded Father was not found to be in civil contempt. However, that conclusion does not undermine the propriety of the money judgments awarded to Mother.

Divorcing parties frequently enter into marital dissolution agreements to divide their marital estate. Once they are approved by a court, these agreements "become legally binding obligations on the parties." *Long v. McAllister-Long*, 221 S.W.3d 1, 8-9 (Tenn. Ct. App. 2006). With certain exceptions not applicable in this case, "the agreements in a marital dissolution agreement are enforceable contract obligations." *Id.* at 9; *see also Penland v. Penland*, 521 S.W.2d 222, 224 (Tenn. 1975) (holding that "only that portion of a property settlement agreement between husband and wife dealing with the legal duty of child support, or alimony over which the court has continuing statutory power to modify, loses its contractual nature when merged into a decree for divorce"). As such, marital dissolution agreements "should be construed and enforced like other contracts"– that is, the court's goal is to ascertain and to give effect to the parties' intentions. *Long*, 221 S.W.3d at 9 (citing *Ahern v. Ahern*, 15 S.W.3d 73, 81 (Tenn. 2000)). The court "should defer to the contracting process by construing the marital [dissolution agreement] fairly and reasonably." *Id.* (citing *Pylant v. Spivey*, 174 S.W.3d 143, 152 (Tenn. Ct. App. 2003)). In addition, like other contracts, a marital dissolution agreement contains "an implied covenant of good faith and fair dealing." *Id.* (citing *Elliott v. Elliott*, 149 S.W.3d 77, 84 (Tenn. Ct. App. 2004)).

"Our search for the parties' intentions must begin with the language of the marital dissolution agreement itself. Each provision must be considered in light of the entire agreement, and the language of each provision should be given its natural and ordinary meaning." *Id.* (citing *Elliott*, 149 S.W.3d at 84 (Tenn. Ct. App. 2004); *Davidson v. Davidson*, 916 S.W.2d 918, 922-23 (Tenn. Ct. App. 1995)).

The relevant provisions of the MDA, Paragraphs 14 and 20, provide as follows:

14.  Taxes. The parties shall file separate returns for 2010. The parties will file an amended form 1040 tax return for 2009, to be prepared by [Father], and any refund will be awarded to [Mother].
. . . .

. . . .

20.     In the event that it becomes reasonably necessary for either party to institute legal proceedings to procure the enforcement of any provisions of this agreement, he or she shall be entitled to a judgment for reasonable expenses, including attorney's fees, incurred in prosecuting the action.

The trial court made the following findings relative to these provisions in the September 23, 2011 Order:

> D. The parties hard-fought Marital Dissolution Agreement, adopted by the Court on March 14, 2011, and in particular paragraph 14 thereof, clearly intends that the parties will file a joint tax return for 2009. Husband had previously prepared just such a document. Note that the language in paragraph 14 calls for a tax return - singular. . . .
>
> . . . .
>
> In light of the foregoing findings, the Court will not interfere with the parties' agreement as to taxes. The Court enters a money judgment against Father and in favor of Mother in the amount of $10,302.36, plus interest at the statutory rate from and after March 14, 2011, and for all of which execution may issue if necessary. . . .  Pursuant to Paragraph 20 of the parties' Marital Dissolution Agreement, Mother shall have and recover a money judgment against Father for a portion of her attorney fees, in the amount of Three Thousand Five Hundred ($3,500.00) Dollars, for which execution may issue if necessary.

We agree with the trial court's interpretation of the MDA that Father entered into a contract that required him to prepare an amended *joint* tax return for 2009 and that Mother was entitled to a judgment for her reasonable expenses in having to file the Motions to Alter or Amend and the Petitions for Civil Contempt due to Father's breach of the MDA.

Regarding the tax return provision, the use of the singular "tax return" indicates a joint tax return; if the parties filed separately, there would be two "tax returns" for 2009. At most, given the absence of the word "joint," the MDA could be considered "ambiguous," or "susceptible to more than one reasonable interpretation," which would require this Court to "look beyond the four corners of the document and consider extrinsic evidence in order to determine the parties' intention." *Cummings, Inc. v. Dorgan*, 320 S.W.3d 316, 322 (Tenn. Ct. App. 2009) (internal citations omitted). The record in this case, most notably the

Temporary Support Order, clearly establishes that the intent of this agreement was for Father to prepare a joint income tax return, as he had done every year of the parties' marriage.

The record establishes that Father refused to prepare the amended joint tax return in violation of the MDA,[2] and as a result, Mother was forced to file separately. Moreover, the record establishes that when Mother filed her Petitions for Civil Contempt, Father had several overdue financial obligations to Mother, including the March mortgage on the property awarded to Wife, the child's school fees, and the child's medical expenses.[3] Because Father failed to comply with material provisions of the MDA in a timely fashion, it was reasonable for Mother to institute legal proceedings to procure enforcement of these provisions. Accordingly, pursuant to Paragraph 20 of the MDA, Mother was entitled to recover her reasonable expenses incurred in prosecuting this action, including attorney's fees.

The trial court determined that Mother was entitled to a judgment in the amount of $10,302.36 for the economic loss occasioned by Father's refusal to file a joint income tax return for 2009. The evidence in the record does not preponderate against this finding.

The trial court also determined Mother was entitled to a judgment of $3,500 for her attorney's fees. We review the amount of an award of attorney's fees under the abuse of discretion standard. *Huntley v. Huntley*, 61 S.W.3d 329, 341 (Tenn. Ct. App. 2001). Under this standard, we are required to uphold the trial court's ruling "as long as reasonable minds could disagree about its correctness," and "we are not permitted to substitute our judgment for that of the trial court." *Caldwell v. Hill*, 250 S.W.3d 865, 869 (Tenn. Ct. App. 2007). Having reviewed the record and considered the factors we believe relevant to this issue, we are unable to conclude that the trial court abused its discretion in awarding Mother $3,500 to recover her attorney's fees to enforce the MDA.

---

[2] We acknowledge Father's assertion that Mother's business records were inadequate; specifically that she had approximately $50,000 in "unexplained deposits." Father asserts these "unexplained deposits" prevented him from being able to attest to the accuracy of a joint tax return unless he counted the deposits as income, which would cause both parties to incur substantial tax liability. Thus, it is apparent that Father was refusing to file a joint tax return for, if he included Mother's deposits as income, he would have been required to pay additional taxes.

[3] The Permanent Parenting Plan states: "The parents agree to divide all costs for the child's private school [including but not limited] to the tuition, uniforms, fees, and books with the Father paying 75% of said cost and the Mother paying 25% of said cost." It also provides that, "Uncovered reasonable and necessary medical expenses, . . . as recommended by the child's physicians, will be divided with the Father paying 75% of uncovered costs and the Mother paying 25% of uncovered costs."

Thus, we affirm the award of $10,302.36 for Mother's tax liability and the award of $3,500 for a portion of Mother's attorney's fees.

IV.

Each party seeks to recover his/her attorney's fees incurred on appeal. Whether to award attorney's fees on appeal in this matter is within the sole discretion of this court. *Archer v. Archer*, 907 S.W.2d 412, 419 (Tenn. Ct. App. 1995); *see also Elliott*, 149 S.W.3d at 88.

We have already noted that Mother was entitled to recover her reasonable expenses, including attorney's fees, incurred to procure the enforcement of provisions of the MDA. Mother successfully defended Father's appeal of the trial court's decisions. Considering Mother's success on appeal, we hold that Mother's request to recover her expenses and attorney's fees incurred in defending this appeal is justified. Therefore, on remand, the trial court should determine the reasonable and necessary attorney's fees Mother incurred on appeal and make an appropriate award after considering the relevant factors and the MDA.

IN CONCLUSION

The judgment of the trial court is affirmed and this matter is remanded with costs of appeal assessed against the appellant, Michael Thomas Dodd.

_____
FRANK G. CLEMENT, JR., JUDGE