# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### September 18, 2012 Session

## RCR BUILDING CORPORATION v. PINNACLE HOSPITALITY PARTNERS, ET AL.

### Direct Appeal from the Chancery Court for Davidson County
### No. 09-1073-II    Carol L. McCoy, Chancellor

_____

### No. M2012-00286-COA-R3-CV - Filed November 15, 2012

_____

This appeal involves a contract for the construction of a hotel. The project owner refused to make the final payment owed to the general contractor, claiming that it was entitled to withhold $237,000 in liquidated damages because the project was not completed on time, in addition to deducting other "offsets" under the contract. The general contractor claimed that the owner was not entitled to liquidated damages for several reasons, including the fact that the owner had caused delays, and the fact that the owner had failed to make a timely claim for liquidated damages as required by the contract. The trial court granted partial summary judgment to the owner on the issue of liquidated damages, allowing the owner to subtract $237,000 from the final payment it owed under the contract. The court also resolved several other issues between the parties. The trial court declared the owner to be the prevailing party in the litigation and awarded the owner its attorney's fees. The general contractor appeals. We affirm in part and reverse in part and remand for further proceedings.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed in Part, Reversed in Part and Remanded**

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which DAVID R. FARMER, J., and J. STEVEN STAFFORD, J., joined.

Gregory L. Cashion, S. Joseph Welborn, Craig N. Mangum, Nashville, Tennessee, for the appellant, RCR Building Corporation

Gerald A. Smith, Jr., Brentwood, Tennessee, for the appellee, Pinnacle Hospitality Partners, LLC

## OPINION

### I. FACTS & PROCEDURAL HISTORY

Pinnacle Hospitality Partners, LLC ("Owner") owned real property in Nashville, Tennessee, located near the Opryland Hotel complex and Opry Mills shopping center. Owner desired to construct the "Hampton Inn & Suites at Opryland" on the property. On June 25, 2007, Owner entered into a contract with a licensed general contractor, RCR Building Corporation ("Contractor"), for the construction of the hotel, with a guaranteed maximum price of approximately $7.5 million. The contract was a standard form American Institute of Architects ("AIA") contract, Document A111-1997. The contract itself consisted of 18 pages, and the parties heavily modified many provisions. Attached to the contract, and incorporated by reference, was AIA Document A201-1997, which provided an additional 55 pages of "General Conditions of the Contract for Construction." The parties modified many of these provisions as well.

According to the contract, Contractor was to achieve substantial completion of the work no later than 304 days after receiving a building permit (which signaled the date of commencement of the work). The building permit was received on July 25, 2007, and therefore, Contractor was obligated to reach substantial completion of the project no later than May 24, 2008. However, the project was not substantially completed until October 30, 2008, or 462 days after the date of commencement. Thus, the project was substantially completed 158 days after the scheduled deadline of May 24, 2008.[1]

The parties' contract provided that time was of the essence and that Contractor would be liable for and pay to Owner $1,500 for each day of delay in the substantial completion of the work beyond the scheduled deadline. After the May 24, 2008 deadline passed, Owner continued to make progress payments to Contractor over the next several months, totaling approximately $3.8 million, without deducting any amounts for liquidated damages. The project was completed in December 2008. Representatives of Owner and Contractor met on December 10, 2008, to discuss Owner's final payment, and at that meeting, a final payment of $607,426.02 was agreed upon by the parties. Owner never made that payment, however, and on March 26, 2009, Owner's attorney sent a letter to Contractor asserting, for the first time, that Contractor owed Owner $237,000 in liquidated damages for failing to complete

---

[1] We note that Owner states, in its brief on appeal, that the work was to be substantially completed by May *23*, 2008, rather than May 24. However, when Owner responded to Contractor's Statement of Undisputed Material Facts in the trial court, Owner admitted that substantial completion was to be obtained by May 24, 2008. Thus, we will refer to the deadline as May 24. In any event, both parties agree that the project was delayed by 158 days.

the project on time.

Contractor filed this lawsuit in the chancery court for Davidson County on June 1, 2009, seeking to recover the agreed upon final payment of $607,426.02, plus interest, costs, and attorney's fees. In addition, Contractor alleged that the delays and disruptions that occurred at the project were caused by Owner, and as a result, Contractor sought to recover additional consequential damages that it incurred. Finally, the complaint stated that Contractor had previously recorded a notice of mechanics' and materialmen's lien with the register of deeds for Davidson County, and it asked that the lien be enforced upon the property in the amount of the trial court's judgment.[2]

Owner filed an answer and counterclaim. Owner did not dispute that the $607,426.02 sum sought by Contractor was "mathematically correct," but Owner claimed that this sum was the amount it owed "prior to contractually mandated adjustments and set-offs." Specifically, Owner claimed that it was entitled to credits against that sum for $237,000 in liquidated damages[3] and for $321,061.78 in payments that it had elected to make directly to subcontractors rather than to Contractor.[4] If these two amounts were deducted from the $607,426.02 final payment, the remaining balance would equal $49,364.24, and Owner stated that it anticipated making additional direct payments to subcontractors, of this approximate amount, once it verified the identity of the subcontractors and the precise sums due. Thus, the answer filed by Owner asked that Contractor's complaint be dismissed with prejudice, and that it be awarded costs and attorney's fees.

Owner filed a motion for partial summary judgment regarding numerous issues. Regarding Contractor's claim for consequential damages due to the delays that Owner

---

[2] The complaint filed by Contractor also named as a defendant Community First Bank & Trust. According to the complaint, no monetary relief was sought against the Bank, but it was named as a defendant due to the fact that it had an interest in the property pursuant to a deed of trust. It was undisputed throughout the proceedings below that the Bank's deed of trust had priority over any lien held by Contractor. However, when the trial court resolved the issues between Owner and Contractor through various motions for partial summary judgment, it failed to enter an order dismissing the "claim" against the Bank. As a result, when Contractor instituted this appeal, we issued an order directing the parties to obtain the entry of a final judgment that resolved all of the issues. The trial court subsequently entered an order of voluntary dismissal as to the claims against defendant Bank.

[3] The counterclaim asserted by Owner was for the $237,000 it sought in liquidated damages. The sum of $237,000 is calculated by multiplying 158 days by $1,500 per day.

[4] It was undisputed that much of the outstanding balance owed to Contractor was for monies owed to its subcontractors. After Owner was sued by Contractor, Owner negotiated payments directly to the subcontractors rather than paying Contractor.

-3-

allegedly caused, Owner pointed out that the parties' contract explicitly waived the right to consequential damages. Regarding the issue of liquidated damages, Owner claimed that it was entitled to such damages as a matter of law under the clear and unambiguous terms of the contract. Owner pointed out that the contract set forth a specific procedure for "Claims and Disputes," by which Contractor was permitted to request extensions of time in certain circumstances, and Contractor had not followed the contractually required procedure to request an extension of time. Relevant to these issues, the contract provided, in the General Conditions document:

> **§ 4.3 CLAIMS AND DISPUTES**
> **§4.3.1** Definition. A Claim is a demand or assertion by one of the parties seeking, as a matter of right, adjustment or interpretation of Contract terms, payment of money, adjustment of the Contract Sum and/or Guaranteed Maximum Price, *extension of time* or other relief with respect to the terms of the Contract. The term "Claim" also includes other disputes and matters in question between the Owner and Contractor arising out of or relating to the Contract. Claims must be initiated by written notice. The responsibility to substantiate Claims shall rest with the party making the Claim.
> **§ 4.3.2** Time Limits on Claims. Claims by either Party must be initiated within 21 days after occurrence of the event giving rise to such Claim or within 21 days after the claimant first recognizes the condition giving rise to the Claim, whichever is later. Claims must be initiated by written notice to the Architect and the other party.[5]
> . . . .
> **§4.3.7** Claims for Additional Time
> **§ 4.3.7.1** If the Contractor wishes to make Claim for an increase in the Contract Time, written notice as provided herein shall be given. . . . *No Claim for an increase in the Contract Time shall be valid unless so made.*
> . . . .
> **§ 4.3.10** Claims for Consequential Damages. The Contractor and Owner waive Claims against each other for consequential damages arising out of or relating to this Contract. . . . Nothing contained in this Section 4.3.10 shall be deemed to preclude an award of liquidated damages, when applicable, in accordance with the requirements of the Contract Documents, including, specifically an award of liquidated damages under Section 4.4 of the Agreement.
> **§ 4.3.11** Strict compliance with the requirements of this Section 4.3 shall be

---

[5] The contract provided that Claims would be referred to the Architect for decision.

a condition precedent to the commencement of a dispute resolution proceeding concerning any Claim, including any Claim for an adjustment in the Contract Sum and/or Guaranteed Maximum Price or Contract Time. Notwithstanding anything in the Contract Documents to the contrary, the Contractor's failure to comply with the requirements of this Section 4.3 shall constitute a final and unconditional waiver and release by the Contractor of such Claims and of any and all rights to seek an increase in the Contract Sum or Guaranteed Maximum Price and/or *an extension of the Contract Time.*

(Emphasis added). Owner argued that because Contractor had not sought an extension of time pursuant to the Claims procedure set forth in the contract, Owner was automatically entitled to $237,000 in liquidated damages. Owner's motion also sought an offset from the final payment for the $321,061.78 in payments Owner made directly to subcontractors.[6] Owner noted that if these two sums were subtracted from the $607,426.02 final payment, the remaining balance would be $49,364.24, and Owner claimed that it "long ha[d] been willing to pay that sum" to Contractor.

In response to Owner's motion for partial summary judgment, Contractor argued that Owner was not entitled to recover liquidated damages under Tennessee law because it was undisputed that Owner caused or contributed to the delays at the project.[7] In addition, Contractor submitted the affidavit of a construction scheduling expert who had reviewed the relevant documents for the project and opined that Owner contributed to the delays. In fact, the expert opined that Contractor was not given the opportunity to complete the project on time due to issues that were outside its control and within the control of Owner. Contractor

---

[6] Contractor admitted that Owner made the direct payments to the subcontractors but denied that such action was permissible under the contract. The trial court ultimately ruled in favor of Owner on the issue of the direct payments to subcontractors, allowing Owner to deduct $321,061.78 from the final payment owed to Contractor. This ruling is not challenged on appeal. However, we include a limited discussion of this issue in our opinion due to its impact on the issue of which party prevailed in the litigation, as it relates to the issue of attorney's fees.

[7] Owner admitted that the plans provided to Contractor in order for it to construct the project were faulty, incomplete, and/or inaccurate, and that this caused delays at the project. Changes to certain designs were required in order to achieve compliance with the building codes. For example, some of the flaws included: a pool design that did not meet local codes, exhaust fans were shown in every bathroom but the plans failed to include exhaust vents, the design for the clothes dryer exhaust vents did not meet codes, the plans failed to include required condensate drains for the eight HVAC units (which was discovered after the concrete slab was roughed in), a mop sink required by the health department was absent from the kitchen design, and the roof design did not allow for proper flashing. In addition, after the May 24, 2008 deadline passed, Owner made changes to the scope of the work to include the addition of a guest laundry room in place of an elevator equipment room, causing further delay.

also opposed Owner's assertion that it was entitled to deduct from the final payment the $321,061.78 in direct payments to subcontractors.

In response to these arguments by Contractor, Owner argued that it was irrelevant whether it caused or contributed to delays at the project because Contractor never sought an extension of time under the Claims procedure of the contract.

During the hearing on the motion for partial summary judgment, Contractor orally argued that Owner was not entitled to recover liquidated damages because, it, too, had failed to file a Claim in accordance with the procedure set forth in the contract. After the hearing, but before the trial court entered its order on the motion, Contractor filed its own motion for partial summary judgment, setting forth in more detail its argument regarding Owner's failure to follow the Claims procedure.[8] Contractor pointed out that a Claim, subject to the 21-day filing requirement, was defined as "a demand or assertion by one of the parties seeking, as a matter of right, adjustment or interpretation of Contract terms, *payment of money*, *adjustment of the Contract Sum* and/or Guaranteed Maximum Price, extension of time *or other relief with respect to the terms of the Contract.*" (Emphasis added). The definition went on to say, "The term 'Claim' also includes other disputes and matters in question between the Owner and Contractor arising out of or relating to the Contract." Contractor argued that Owner's "claim" for liquidated damages clearly met this definition, and therefore, Owner was required to initiate a Claim, under the contract, within 21 days of the event giving rise to the Claim. It was undisputed that Owner did not provide notice of its intent to seek $237,000 in liquidated damages until March 2009, months after the May 2008 deadline had passed.

Contractor's motion for partial summary judgment also rehashed its argument regarding the fact that Owner caused delays and was therefore precluded from recovering liquidated damages under Tennessee law. Also, Contractor sought an award of $49,364.24 for the "undisputed contract funds being withheld" by Owner, which were not included in the two claimed offsets.

The trial court entered an order granting in part Owner's previously filed motion for partial summary judgment. The trial court found that there were no disputed issues of fact and that it only needed to interpret the clear and unambiguous terms of the contract. The trial court found that the parties' contract precluded Contractor's claim for consequential damages. The court found that Owner was entitled to subtract $321,061.78 in direct

---

[8] The trial court declined to rule on this issue when it was raised during the hearing on Owner's motion for partial summary judgment. It apparently deferred ruling on the issue and instructed the parties to submit briefs on the matter.

payments to subcontractors from the final payment owed to Contractor. Regarding Contractor's liability for liquidated damages, the trial court found that Owner had caused certain delays that increased the time required to reach substantial completion of the Project. The court acknowledged Contractor's argument that, under Tennessee law, no liquidated damages can be awarded to a party if he or she contributed to or mutually caused the delay or breach. The court found this to be "an accurate statement of the law," at least, "in the abstract." However, the court also stated that the parties in this case had, "by specific contractual provisions[,] established both the timing and methodology" for deciding whether Owner contributed to or mutually caused the delays, by utilizing the Claims procedure. The court concluded that Contractor had waived all Claims for an extension of time based on Owner's delays by failing to take advantage of the Claims procedure. Furthermore, the court found that the parties had "neutered any Tennessee law" precluding liquidated damages for parties who cause delays by including a provision in their contract specifically addressing concurrent delays. In sum, the trial court interpreted the contract as requiring Contractor to "automatically pay" liquidated damages to Owner if it missed the substantial completion deadline without having been granted an extension of time through the Claims procedure. As such, the trial court found that Owner was entitled to liquidated damages[9] under the clear terms of the contract.[10]

The trial court's order did not address the motion for partial summary judgment recently filed by Contractor, or Contractor's argument (raised at the summary judgment hearing) that Owner was not entitled to liquidated damages because it failed to initiate a timely Claim for such damages under the Claims procedure. Owner filed a response to Contractor's motion regarding this issue, in which it admitted that it did not provide Contractor with written or verbal notice of its intent to seek liquidated damages prior to the March 26, 2009 letter from its attorney.[11] Owner also admitted that at the parties' meeting

---

[9] In this order, the trial court granted the motion for partial summary judgment only as to 128 calendar days of delay, for an award of $192,000. In a subsequent order, the court granted the remaining request for liquidated damages, for 30 additional days, for a total award of $237,000 in liquidated damages.

[10] Contractor filed a motion for permission to seek an interlocutory appeal to the Court of Appeals, seeking relief pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure, but the trial court denied the motion. This Court subsequently denied Contractor's motion to seek an extraordinary appeal pursuant to Rule 10.

[11] Owner also admitted that the project was delayed: 30 days by its choice of a site with poor soil conditions and its failure to make timely decisions when those conditions were discovered by Contractor; 28 days by the design team's failure to include in the design an explosion wall that was necessary because the building was too close to an electric transformer; four to five weeks due to the issue with the HVAC units; 30 days due to the clothes dryer vents; and an unspecified time due to a design conflict between the
(continued...)

in December 2008 to discuss final payment, a final contract price of $607,426.02 was agreed upon by the parties. Owner admitted that, during that meeting, Contractor gave up claims for extra work that it had performed on the project, for which it sought payment, in order to reach an agreement on the final contract price. Owner conceded that Contractor "would not have relinquished these claims to reach a final contract price had [Owner] indicated that it intended to assess liquidated damages against [Contractor]," and therefore, "[Owner's] failure to give notice of its claim for liquidated damages adversely impacted [Contractor's] ability to negotiate a final contract price." Nevertheless, Owner maintained that the imposition of liquidated damages was "automatic and self-executing" when Contractor missed the deadline, and therefore, it was not necessary for Owner to file a Claim in order to recover liquidated damages. Owner contended that its claim for liquidated damages did not meet the definition of a Claim under the contract. Owner also argued that it had not waived its right to liquidated damages because the contract required waivers to be in writing. Finally, Owner opposed an award of $49,364.24 to Contractor, claiming that Contractor was not yet entitled to such payment because it had not met the conditions precedent to final payment under the contract, such as providing certain documents to Owner.

The trial court entered an order denying Contractor's motion for partial summary judgment in its entirety. The trial court declined to award Contractor the sum of $49,364.24 for the allegedly undisputed remaining balance due under the contract, finding that it lacked sufficient evidence to resolve that issue. Next, the court addressed Contractor's arguments regarding Owner's inability to recover liquidated damages.[12] The court concluded that the collection of liquidated damages was not a Claim within the meaning of the contract, and that the Claims procedure was only intended to cover changes or additions to the parties' contractual relationship, when there was a dispute between the parties. The court concluded that liquidated damages were automatic and self-executing and that Owner was entitled to simply subtract liquidated damages from its progress payments to Contractor when it unilaterally determined that it was reasonably necessary to protect itself from loss, without prior notice to Contractor. Finally, the court concluded that even if a claim for liquidated damages did qualify as a Claim, Owner's failure to file a Claim did not preclude it from recovering liquidated damages; it only prevented Owner from filing a lawsuit to recover such damages.

[11](...continued)
location of the entry drive and guide wires, requiring the relocation of the entry drive. Owner admitted that its architect took weeks or months to respond to requests for information.

[12] This order incorporated the trial court's previous order, in which the court had already rejected Contractor's argument that Owner could not recover liquidated damages because it caused delays.

Contractor later filed another motion for partial summary judgment, again seeking to recover the unpaid balance of $49,364.24 and seeking to have its lien enforced. Owner again opposed Contractor's contention that it was entitled to the remaining balance of $49,364.24, alleging that Contractor had not met the conditions precedent to final payment, and also arguing that the final payment, when due, should be reduced to $12,461.37. The trial court eventually granted Contractor's motion and ordered Owner to pay $49,364.24, representing the balance of contract funds owed by Owner, directly to an electrical subcontractor at the request of Contractor. The court found that Contractor's lien was valid and enforceable and provided that the lien would be released upon payment by Owner of $49,364.24 to the subcontractor.

Both parties filed cross-motions for attorney's fees and expenses, seeking to be declared the prevailing party for purposes of the contract's attorney's fee provision. Owner sought to recover $150,985.85 in such attorney's fees and expenses, while Contractor sought to recover $125,859.59 in fees and expenses that it had incurred. The trial court granted Owner's motion in its entirety, declaring it to be the prevailing party in the litigation and awarding it $150,985.85 in attorney's fees and expenses, and the court denied Contractor's motion in its entirety. Contractor filed a notice of appeal to this Court.

## II. ISSUES PRESENTED

On appeal, Contractor does not challenge the trial court's conclusion that Owner was entitled to deduct $321,061.78 from the final payment owed to Contractor based on the payments Owner made directly to subcontractors. Likewise, Owner does not challenge the trial court's order requiring it to pay $49,364.24 directly to the electrical subcontractor. However, both parties present numerous arguments and issues regarding the propriety of the award of liquidated damages, and both parties claim to be the prevailing party in the litigation for purposes of the attorney's fee provision. The issues presented on appeal by Contractor are essentially:

1. Whether the trial court's award of liquidated damages to Owner is contrary to established Tennessee Supreme Court precedent because Owner admitted responsibility for causing delays to the project;
2. Whether the trial court erred in concluding that Contractor waived its common law defense regarding the causation of delays when it failed to request an extension of time under the "Claims" procedure set forth in the contract;
3. Whether the trial court misinterpreted the parties' contract by ruling that a claim for liquidated damages was not a "Claim" as that term is defined by the contract;
4. Whether the trial court erred in concluding that even if a claim for liquidated damages was a "Claim," Owner's failure to follow the Claims procedure did not bar it from

recovering liquidated damages in this lawsuit;

5.  Whether the trial court erred in holding that Owner was the prevailing party rather than Contractor; and

6.  Whether Contractor is entitled to the enforcement of its lien in the amount awarded by this Court in addition to the amount previously awarded, but not yet paid, to the electrical subcontractor.

Owner's statement of the issues is not materially different than that of Contractor.

For the following reasons, we affirm the decision of the chancery court in part, and we reverse in part, and remand for further proceedings consistent with this opinion.

### III.  STANDARD OF REVIEW

The issues presented on appeal require us to interpret a complex construction contract. "Questions of contract interpretation are generally considered to be questions of law, and thus are especially well-suited for resolution by summary judgment." ***Ross Prods. Div. Abbott Labs. v. State***, No. M2006-01113-COA-R3-CV, 2007 WL 4322016, at *2-3 (Tenn. Ct. App. Dec. 5, 2007) (citing *Doe v. HCA Health Servs. of Tenn.*, 46 S.W.3d 191, 196 (Tenn. 2001); *Guiliano v. Cleo*, 995 S .W.2d 88, 95 (Tenn. 1999); *Hamblen County v. City of Morristown*, 656 S.W.2d 331, 335-36 (Tenn. 1983)).

"'The cardinal rule for interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention, consistent with legal principles.'" ***Maggart v. Almany Realtors, Inc.***, 259 S.W.3d 700, 703-704 (Tenn. 2008) (quoting *Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.*, 521 S.W.2d 578, 580 (Tenn. 1975)). "[O]ur task is to ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the contractual language." ***Guiliano***, 995 S.W.2d at 95 (citing *Hamblen County*, 656 S.W.2d at 333-34; *Bob Pearsall Motors, Inc.*, 521 S.W.2d at 580)). The entire contract should be considered in determining the meaning of any or all of its parts. ***Maggart***, 259 S.W.3d at 704 (quoting *Cocke County Bd. of Highway Comm'rs v. Newport Utils. Bd.*, 690 S.W.2d 231, 237 (Tenn. 1985)). "The interpretation should be one that gives reasonable meaning to all of the provisions of the agreement, without rendering portions of it neutralized or without effect." ***Id.*** (citing *Davidson v. Davidson*, 916 S.W.2d 918 922-23 (Tenn. Ct. App. 1995)). "All of the contract provisions should be construed in harmony with each other, if possible, to promote consistency and avoid repugnancy between the various provisions of a single contract." ***Id.*** (citing *Guiliano*, 995 S.W.2d at 95).

## IV. DISCUSSION

### A. Is a claim for Liquidated Damages a "Claim"?

We find it appropriate to begin our analysis by addressing Contractor's assertion that Owner's claim for liquidated damages qualified as a "Claim" that was subject to the contract's procedural requirements for "Claims and Disputes." We begin here because if Owner failed to follow a necessary contractual procedure for asserting a claim for liquidated damages, it becomes irrelevant whether Owner would have been entitled to the underlying award of liquidated damages in the first place.

To recap, Section 4.3 of the contract's General Conditions document addresses "Claims and Disputes." It begins by defining a "Claim" as follows:

> A Claim is a demand or assertion by one of the parties seeking, as a matter of right, adjustment or interpretation of Contract terms, payment of money, adjustment of the Contract Sum and/or Guaranteed Maximum Price, extension of time or other relief with respect to the terms of the Contract. The term "Claim" also includes other disputes and matters in question between the Owner and Contractor arising out of or relating to the Contract.

The contract provided that "Claims by either Party must be initiated within 21 days after occurrence of the event giving rise to such Claim or within 21 days after the claimant first recognizes the condition giving rise to the Claim, whichever is later." Claims were initiated by written notice to the project architect and to the other party. The Claims and Disputes provision contained several subsections addressing specific examples of Claims, such as Claims for concealed or unknown conditions, Claims for additional cost, Claims for additional time, Claims relating to injury or damage to person or property, and Claims for consequential damages. The subsection addressing Claims for consequential damages stated that the parties waived Claims against each other for consequential damages, with the following exception: "Nothing contained in this [subsection] shall be deemed to preclude an award of liquidated damages, when applicable, in accordance with the requirements of the Contract Documents[.]"

The contract provided that Claims would be referred initially to the project architect for decision, and it stated, "An initial decision by the Architect shall be required as a condition precedent to mediation, arbitration or litigation of all Claims between the Contractor and Owner arising prior to the date final payment is due," unless thirty days passed after a Claim was referred to the architect with no decision being rendered by the architect. The contract provided that the architect would review Claims within ten days of

receipt of the Claim and either approve it, reject it, request additional data, suggest a compromise, or advise the parties that it could not resolve the claim if there was insufficient information or if the architect determined that it was inappropriate for him or her to resolve the Claim.

On appeal, Contractor argues that a claim for liquidated damages plainly meets the definition of a "Claim" because it is a "demand . . . by one of the parties seeking, as a matter of right, . . . payment of money [or] adjustment of the Contract Sum . . . or other relief with respect to the terms of the Contract." According to Contractor, "it cannot be disputed" that the payment of liquidated damages would qualify as a payment of money. Contractor further argues that, at the very least, a claim for liquidated damages would fall under the second sentence of the definition, describing a Claim as also including "other disputes and matters in question between the Owner and Contractor arising out of or relating to the Contract."

In response, Owner argues that a demand for liquidated damages does not meet the definition of a Claim. Owner argues it was not seeking a "payment of money" because, in reality, it was simply deducting the amount of liquidated damages owed by Contractor from the payment owed to Contractor for the work, and therefore, Contractor did not "pay" money to Owner for the liquidated damages. We reject the narrow interpretation urged by Owner. Looking to the plain meaning of the text, we have no doubt that a claim for liquidated damages qualifies as a "demand" for "payment of money." The contract itself recognizes this in the section providing for liquidated damages, as it provided that Contractor would "be liable for and shall *pay* to the Owner" $1,500 per day in liquidated damages if it missed the substantial completion deadline. (emphasis added). We further find that Owner's claim for liquidated damages would meet the definition of a Claim as a demand for "other relief with respect to the terms of the Contract," or "other disputes and matters in question between the Owner and Contractor arising out of or relating to the Contract."

At least one other court has reached this same conclusion. In ***A. Hedenberg and Company v. St Luke's Hospital of Duluth***, No. C7-95-1683, 1996 WL 146732, at *1-3 (Minn. Ct. App. Apr. 2, 1996), a contractor who was constructing a new addition to a hospital failed to meet a construction deadline for substantial completion, and thereafter, when the hospital received the contractor's request for final payment, the hospital asserted a right to withhold liquidated damages from its payments to the contractor. The contract contained a "Claims and Disputes" provision, and it defined a "Claim" in basically the same manner as the contract before us – "a demand or assertion by one of the parties seeking, as a matter of right, adjustment or interpretation of Contract terms, payment of money, extension of time or other relief with respect to the terms of the Contract. The term 'Claim' also includes other disputes and matters in question between the Owner and Contractor

-12-

arising out of or relating to the Contract."[13]  The Minnesota Court of Appeals noted that this provision defines a Claim "very broadly," and it found, under the "plain and ordinary meaning" of the terms, that the hospital's attempt to assess liquidated damages was "a demand or assertion . . . seeking, as a matter of right, . . . payment of money."   As such, the Court concluded that the claim for liquidated damages was a "Claim" subject to the 21-day time limit contained in the "Claims and Disputes" provision of the contract, and the hospital's claim for liquidated damages was barred because it failed to give written notice of its Claim within that time period.

Owner argues that the imposition of liquidated damages in this case was automatic and self-executing under the contract, and therefore, it was not required to file a Claim for liquidated damages.  Specifically, Owner contends that the contract allowed Owner to unilaterally determine if and when liquidated damages were appropriate, and the amount owed, and to simply deduct that amount from any payment it owed to Contractor without any prior notice of its intent to do so.  As the basis for its position, Owner points to Section 9.6.1 of the General Conditions document, which addresses the monthly progress payments to be made by Owner.  That section includes the following statement:

> The Owner shall be entitled to withhold payments to the Contractor and/or nullify a previous payment to the Contractor to the extent reasonably necessary to protect the Owner from any loss or expenditure by reason of the matters set forth in Sections 9.5.1.1 through 9.5.1.12 of these General Conditions.

Sections 9.5.1.1 through .12 list matters such as "defective Work not remedied," "third party claims filed," "damage to the Owner or another contractor," "failure to carry out the Work in accordance with the Contract Documents," and "liquidated damages, if applicable."  If we were to read this section independently and in isolation, we could read it to mean that Owner was entitled to withhold funds from the Contractor for liquidated damages whenever it decided that it was necessary to protect itself.  However, "we cannot read portions of a contract in isolation—they must be read together to give meaning to the document as a whole."  *Maggart*, 259 S.W.3d at 705.  Considering the contract's broad definition of a

---

[13]  The definition of Claim in the contract before us only differs in that it contains the following additional italicized language, which did not appear in the contract in *A. Hedenberg:*

> A Claim is a demand or assertion by one of the parties seeking, as a matter of right, adjustment or interpretation of Contract terms, payment of money, *adjustment of the Contract Sum and/or Guaranteed Maximum Price*, extension of time or other relief with respect to the terms of the Contract.  The term "Claim" also includes other disputes and matters in question between the Owner and Contractor arising out of or relating to the Contract.

Claim, and the detailed and strict procedural requirements set forth in the Claims provision, we conclude that it was not the parties' intent to allow Owner to ignore the Claims procedure when any of the twelve circumstances listed in Sections 9.5.1.1 through .12 arose. Taking Owner's argument to its logical conclusion, in any of these listed situations, Owner would be entitled to unilaterally decide the amount it was owed and to deduct that amount from its monthly payments to Contractor at any time and without prior notice.[14] Contractor, on the other hand, acknowledges that Owner had a right to withhold payments under the listed circumstances, but Contractor contends that this was a *contingent* right, i.e., subject to Owner's duty to follow the Claims procedure. We agree with Contractor's interpretation. "All of the contract provisions should be construed in harmony with each other, if possible, to promote consistency and avoid repugnancy between the various provisions[.]" *Maggart*, 259 S.W.3d at 704. In doing so, we reject the suggestion that the imposition of liquidated damages was "automatic" under Section 9.6.1 and somehow exempt from the Claims procedure.[15] The definition of a Claim is certainly broad enough to include instances where the party initiating the Claim is entitled to payment under the existing terms of the contract. It speaks in terms of "a *demand* or assertion by one of the parties seeking, *as a matter of right*, [a] payment of money [or] relief with respect to the terms of the Contract." (emphasis added).[16]

Again, our conclusion with regard to this issue is supported by the Minnesota Court's decision in *A. Hedenberg.* The contract in that case also "allowed the hospital to begin withholding payments the moment the scheduled completion date had passed," and yet the Court concluded that it was "at that point" that a "Claim" arose. 1996 WL 146732, at *2.

Owner argues that a demand or assertion by a party only qualifies as a Claim if it is disputed when made, and because, from Owner's perspective, there was no dispute about

---

[14] Interestingly, Owner's brief concedes that if it damaged a piece of Contractor's equipment, or if Contractor trespassed on adjacent property and damaged it resulting in Owner being liable to the neighboring property owner, or if Contractor failed to comply with civil rights laws in relation to its construction of the project, these would all be examples of disputes that *would* be subject to the Claims procedure. Yet, under Owner's interpretation of Section 9.6.1 of the contract, Owner would be entitled to unilaterally deduct from progress payments, at any time and without prior notice, whatever sum it deemed was appropriate in the case of "third party claims filed" or "damage to the Owner or another contractor," without following the Claims procedure.

[15] Owner does not explain how it would nullify a previous payment to the Contractor in an "automatic and self-executing" fashion.

[16] Owner argues that the definition of Claim only describes situations involving a change in an existing term of the contract. We find no such limitation in the contractual definition of a Claim, and we will not simply read one into the definition where none exists.

Contractor's liability for liquidated damages, there was no Claim either. Owner suggests that no dispute existed until Contractor objected to paying liquidated damages, and therefore, the burden was actually on Contractor to file a Claim if it desired to dispute the payment of liquidated damages. Again, we find no support for this interpretation of the definition of Claim. The Claims procedure clearly governs "Claims *and* Disputes." (Emphasis added). There is nothing in the definition of Claim suggesting that there must have been a prior dispute or objection by the opposing party in order for the demand or assertion to qualify as a Claim. Owner asserts in its brief that its interpretation of the definition of a Claim "is fully supported" and "indeed mandated" by federal courts' interpretation of the term "Claim" in the context of litigation involving the Contract Disputes Act ("CDA"), 41 U.S.C. §§ 601-613, and the Federal Acquisition Regulations ("FAR") which implement the CDA. According to Owner, the definition of "Claim" found in the FAR is "strikingly similar" to the definition of "Claim" in the contract before us, and yet federal courts have interpreted the FAR definition of Claim as excluding "routine" requests for payment that are submitted in accordance with the expected or scheduled progress of contract performance. Owner contends that, under the FAR, a "routine" payment only becomes a "Claim" if a party disputes it. However, what Owner fails to note in its discussion of this issue is that the FAR's definition of Claim specifically states:

> Claim means a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract. However, a written demand or written assertion by the contractor seeking the payment of money exceeding $100,000 is not a claim under the Contract Disputes Act of 1978 until certified as required by the Act. *A voucher, invoice, or other routine request for payment that is not in dispute when submitted is not a claim.* The submission may be converted to a claim, by written notice to the contracting officer as provided in 33.206(a), if it is disputed either as to liability or amount or is not acted upon in a reasonable time.

48 C.F.R. 2.101. Thus, the federal courts' interpretation of this definition is required by additional language that is not present in the definition used in the contract before us. The two definitions of Claim are, therefore, not similar, and the federal courts' interpretation does not "mandate" a similar interpretation of the contract in this case.

Finally, Owner argues that it would have been pointless to file a Claim for liquidated damages because there would have been nothing for the architect to decide beyond a simple mathematical calculation of the number of days multiplied by the stipulated damages owed per day. We note that the Claims procedure serves the purpose of providing timely notice

-15-

to the other party of an intent to pursue a Claim. But in any event, the parties agreed to initiate Claims by utilizing this procedure, and it is not our role to judge the wisdom or folly of the agreement. We cannot excuse Owner from compliance with the Claims procedure simply because it now contends that it would have been a waste of time.

In sum, we find that Owner's claim for liquidated damages was a Claim subject to the Claims procedure set forth in the contract. Owner does not dispute that it did not initiate a Claim or even provide Contractor with notice, either written or verbal, of its intent to seek liquidated damages until March 2009, when its attorney sent a letter to Contractor. This letter came nearly a year after the May 2008 substantial completion deadline, and months after construction was finally completed in December 2008. Nevertheless, Owner claims that it is still entitled to recover liquidated damages for various reasons.

> Owner argues that its failure to file a Claim is irrelevant because the contract stated: § 14.6.9 Waivers and Amendments. No waiver, amendment, extension or variation in the terms of the Contract Documents shall be valid against a party unless in writing and signed by such party and then only to the extent specifically set forth in the writing. No failure or delay on the part of a party in exercising any right, power or privilege under the Contract Documents, nor any course of dealing between the parties, will waive, amend or vary the terms of the Contract Documents.
> . . .
> § 13.4.2 [of the General Conditions document] No action or failure to act by the Owner, Architect or Contractor shall constitute a waiver of a right or duty afforded them under the Contract, nor shall such action or failure to act constitute approval of or acquiescence in a breach thereunder, except as may be specifically agreed in writing.

Owner interprets these provisions to mean that it cannot be held to have "waived" its right to liquidated damages unless it did so in writing. We disagree. By finding that Owner was required to initiate a Claim for liquidated damages, we are not waiving, amending, extending or varying "the terms of the Contract Documents" in violation of Section 14.6.9. To the contrary, we are recognizing and enforcing the existing terms of the contract. Similarly, we find no conflict with Section 13.4.2 because it specifically recognizes that a party may waive a right afforded under the contract "as may be specifically agreed in writing." Here, the parties so agreed in Section 4.3 of the contract, by providing that Claims had to be initiated within a certain time frame and in a specific fashion. To interpret Sections 14.6.9 and 13.4.2 as Owner does would render the Claims procedure meaningless. As noted above, we must look at the entire contract, and our "interpretation should be one that gives reasonable meaning to all of the provisions of the agreement, without rendering portions of it neutralized

-16-

or without effect." *Maggart*, 259 S.W.3d at 704.

Next, Owner argues that the Claims procedure did not preclude it from seeking liquidated damages in this litigation because the contract stated:

> Strict compliance with the requirements of this Section 4.3 [regarding Claims and Disputes] shall be a condition precedent to the commencement of a dispute resolution proceeding concerning any Claim, including any Claim for an adjustment in the Contract Sum and/or Guaranteed Maximum Price or Contract Time. Notwithstanding anything in the Contract Documents to the contrary, the Contractor's failure to comply with the requirements of this Section 4.3 shall constitute a final and unconditional waiver and release by the Contractor of such Claims and of any and all rights to seek an increase in the Contract Sum or Guaranteed Maximum Price and/or an extension of the Contract Time.

Owner points out that the second sentence of this provision only addresses the *Contractor's* failure to file a Claim, and the first sentence states that filing a Claim is a condition precedent to the *commencement* of a dispute resolution proceeding concerning a Claim. Owner argues that it was not precluded from filing a counterclaim for liquidated damages in this litigation because the complaint was filed and the case was *commenced* by Contractor. We are not persuaded. Contractor did not commence this litigation to pursue a Claim for liquidated damages. The contract required strict compliance with the Claims procedure as "a condition precedent to the commencement of a dispute resolution proceeding concerning any Claim," and the Claims procedure was not followed with regard to Owner's Claim for liquidated damages. Furthermore, a separate section of the contract, entitled "Resolution of Claims and Disputes, stated, "An initial decision by the Architect shall be required as a condition precedent to mediation, arbitration or litigation of all Claims between the Contractor and Owner arising prior to the date final payment is due," with one exception not applicable here. Thus, we conclude that Owner's failure to pursue a Claim for liquidated damages under the Claims procedure set forth in the contract was a condition precedent to its ability to seek liquidated damages in this litigation.

Because we find that Owner is barred from recovering liquidated damages due to its failure to comply with the contract's Claims procedure, Owner was not entitled to deduct $237,000 from the final contract payment Owner owed to Contractor. We reverse the trial court's decision insofar as it granted partial summary judgment to Owner and awarded Owner $237,000 in liquidated damages to be deducted from the final contract payment. We also reverse the trial court's decision insofar as it denied Contractor's motion for partial summary judgment regarding its entitlement to recover the same $237,000 wrongfully

withheld by Owner. Accordingly, we remand this matter to the trial court with directions to enter an order granting Contractor's motion for partial summary judgment as it relates to this issue.

### B. *Prejudgment Interest*

Contractor has asked this Court to award prejudgment interest as specified by the parties' contract. Section 14.2 of the contract stated that Owner would make progress payments and the final payment to the Contractor as provided by the contract, and that disputed amounts which were found "by a court of competent jurisdiction to be owed by the Owner to the Contractor [would] bear interest at the rate of six percent (6%) per annum commencing forty-five (45) days after the Owner's receipt of the Application for Payment." Owner presents no argument to suggest that an award of prejudgment interest is inappropriate, and therefore, the trial court shall calculate the proper award of prejudgment interest on remand.

### C. *Attorney's Fees*

Next, we must address the issue of attorney's fees and expenses. With regard to this issue, the parties' contract provided:

> If either party to this Agreement commences a dispute resolution proceeding, whether litigation, arbitration or otherwise, respecting any question between the parties to this Agreement arising out of or relating to this Agreement or the breach thereof, or the services performed pursuant thereto, the prevailing party in such dispute resolution proceeding shall be entitled to the recovery of a reasonable attorneys' fee and all other reasonably incurred costs and expenses of the successful prosecution or defense of such proceeding. The term "dispute resolution proceeding" as used herein shall be deemed to include any appeals from lower court judgments . . . . The attorneys' fees award shall be awarded so as to fully reimburse all reasonable attorneys' fees actually incurred in good faith, regardless of the size of the judgment, it being the intention of the parties to fully compensate for all attorneys' fees paid or incurred by the prevailing party in good faith, regardless of the size of the judgment.

Before the trial court, the parties filed cross-motions for attorney's fees and expenses, both seeking to be declared the prevailing party. Owner sought to recover $150,985.85 in attorney's fees and expenses, while Contractor sought to recover $125,859.59 in fees and

expenses.[17]  The trial court granted Owner's motion in its entirety, declaring it to be the prevailing party, and denied Contractor's motion in its entirety.

On appeal, Contractor argues that it was the prevailing party in the litigation because it filed this lawsuit to recover $607,426.02 that Owner owed under the contract, and the net result of the lawsuit was that Owner was ordered to pay a portion of that sum, $49,364.24, to Contractor's subcontractor, while Contractor was not ordered to pay anything. Contractor acknowledges that the trial court allowed Owner to deduct $321,061.78 from the final payment due to the direct payments Owner made to subcontractors, but Contractor contends that even with regard to this issue, it nevertheless "materially altered the behavior of [Owner] by filing the instant lawsuit" because Owner negotiated payments to the subcontractors after being sued. Contractor also contends that the "main issue in dispute" was the issue of liquidated damages, and that it should be named the prevailing party if the trial court's finding as to liquidated damages is reversed. In response, Owner claims that it was the prevailing party because it was successful in establishing the "setoffs" it sought to deduct from the final payment.

Our Supreme Court recently explained that "a party need not attain complete success on the merits of a lawsuit" in order to be considered the prevailing party. *Fannon v. City of LaFollette*, 329 S.W.3d 418, 431 (Tenn. 2010). "Rather, a prevailing party is one who has succeeded 'on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'" *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). "In other words, the 'prevailing party' is the party 'who obtains some relief on the merits of the case or a material alteration in the legal relationship of the parties.'" *Isaac v. Center for Spine, Joint, & Neuromuscular Rehab., P.C.*, No. M2010–01333–COA–R3–CV, 2011 WL 2176578, at *8 (Tenn. Ct. App. Jun. 1, 2011) (quoting *Estate of Burkes v. St. Peter Villa, Inc.*, No. W2006–02497–COA–R3–CV, 2007 WL 2634851, at *4 (Tenn. Ct. App. Sept. 12, 2007)).

In light of our reversal of the award of liquidated damages on appeal, we likewise find it appropriate to reverse the trial court's decision to designate Owner as the prevailing party in this litigation. Contractor was successful in proving that there was an unpaid balance under the contract. Owner was ordered to pay $49,364.24 of the balance to an electrical subcontractor at the request of Contractor, and we have concluded that Owner owes an additional $237,000 to Contractor that was wrongfully withheld as liquidated damages. As for the remaining $321,061.78 of the sum sought in Contractor's complaint, Owner elected

---

[17]  The trial court noted that neither party objected to the total amount of fees and expenses sought by the other party, the hourly rates or the reasonableness and necessity of the hours expended. The parties differed only as to which party prevailed in the litigation.

to pay this amount to subcontractors rather than to Contractor, but it was undisputed that Owner did in fact owe this amount under the contract. Considering all of these issues, we find that Contractor succeeded on a significant claim and was awarded a substantial measure of the relief sought in its complaint. The litigation altered the legal relationship between the parties and modified the behavior of Owner in a way that benefitted Contractor. Consequently, Contractor is entitled to a reasonable attorney's fee and expenses, pursuant to the contract's attorney's fee provision, for pursuing its claims in the trial court and on appeal. We therefore remand this issue to afford the parties the opportunity to be heard as to the amount of the award, and for the trial court to make the appropriate award of fees and expenses to Contractor.

### D. The Lien

As noted above, Contractor recorded a notice of mechanics' and materialmen's lien in the amount of $607,426.02, with the register of deeds office for Davidson County, Tennessee, on May 26, 2009. The trial court held that this lien was "valid and enforceable," and that the lien would be released upon Owner's payment of the $49,364.24 sum that it was ordered to pay directly to the electrical subcontractor. In Contractor's final issue presented on appeal, it asks that its lien be enforced in the amount of $237,000 for the funds improperly withheld as liquidated damages, in addition to the $49,364.24 previously awarded, but not yet paid, for a total lien amount of $286,364.24. Owner does not present any argument with regard to this issue on appeal to suggest that such relief is inappropriate. Finding no reason to deny the relief requested by Contractor, we conclude that Contractor's lien is enforceable in the amount of $286,364.24.

### V. CONCLUSION

For the aforementioned reasons, the decision of the chancery court is hereby affirmed in part and reversed in part, and this matter is remanded for further proceedings consistent with this opinion. Costs of this appeal are taxed to the appellee, Pinnacle Hospitality Partners, LLC, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.